16 F.3d 219
 E. Dewey ANDERSON, Clisten Dale Corbett, Barbara Ferris, et
al., Plaintiffs-Appellees,
v.
Gilbert L. HOLMES, in His Individual and Official Capacities
as Commissioner of the Bureau of Motor Vehicles for the
State of Indiana and William Stinson, in His Individual and
Official Capacities as Deputy Commissioner of the Bureau of
Motor Vehicles of the State of Indiana, Defendants-Appellants.
 No. 93-1694.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 3, 1993.
Decided Feb. 10, 1994.
 
 Peggy A. Hillman (argued), Richard A. Waples, Indianapolis, IN, for plaintiffs-appellees.
 David C. Campbell, Sharon L. Groeger (argued), Bingham, Summers, Welsh & Spilman, Indianapolis, IN, for defendants-appellants.
 Before WOOD, Jr., FLAUM, and EASTERBROOK, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 In 1988, the unthinkable happened in Indiana, generating an unheralded degree of uncertainty in the career plans of many civil servants. Indiana had elected Evan Bayh as Governor, the first Democrat to win the post since 1964. See Mary Dieter, Mutz, GOP Can't Claim they Weren't Forewarned, The Courier-Journal, Nov. 13, 1988, at 1A. With Bayh's election, as happens after almost all major power shifts, came a purging of members of the opposing party from state offices. On one level such actions are understandable, and even necessary; because politically disloyal hangers-on from former administrations are likely to be resistant to new policy initiatives, filling high-level governmental positions with politically loyal individuals can be essential to carrying out the will of the voters. Selch v. Letts, 5 F.3d 1040, 1041 (7th Cir.1993).
 
 
 2
 That logic, however, does not extend to the total expunction from government service of those sympathizing with the losing party. The idea that individuals can lose their jobs based on their political beliefs, even when those convictions in no way impact on job performance, offends the fundamental First Amendment principle that the government should not punish people based solely on the views they hold. Elrod v. Burns, 427 U.S. 347, 356-57, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976). What makes sense for upper echelon officials may not make sense for the people who perform essential every-day tasks that have no policy-making or confidential aspects. Wilbur v. Mahan, 3 F.3d 214, 216-17 (7th Cir.1993).
 
 
 3
 The plaintiffs in this case held jobs fitting into the latter category. The Indiana Bureau of Motor Vehicles (BMV) had for many years employed the plaintiffs, all Republicans, as Field Investigators. Because the position of Field Investigator had become obsolete, most of the plaintiffs were performing the duties of Drivers License Examiners. On April 26, 1989, as a part of a governmental reorganization plan by the newly elected Democratic administration, the BMV terminated fourteen Field Investigators, eleven of whom are plaintiffs in this case. The Indiana Administrative Code gives employees terminated because of governmental reorganization priority consideration for similar vacant positions,[1] a fact of which the plaintiffs and the BMV were aware.
 
 
 4
 The plaintiffs sought to take advantage of the priority consideration to which they were entitled by writing to or speaking with defendants Gilbert L. Holmes and William Stinson, respectively the Commissioner and Deputy Commissioner of the BMV. Although a shortage in the number of Drivers License Examiners existed, the defendants made no effort to fill the vacancies with the plaintiffs. Instead, the BMV waited until May of 1990 to conduct the vast majority of its hiring--fourteen new hires to replace the fourteen individuals terminated in 1989.[2] The BMV began filling those positions just after the plaintiffs' priority consideration period had expired. Perhaps that had something to do with Stinson's comment, according to a BMV Personnel Director, that "he didn't know about any regulations, he didn't care about any regulations, and these employees would not be recalled."
 
 
 5
 The plaintiffs filed suit against Holmes and Stinson in the District Court for the Southern District of Indiana, and the defendants moved for summary judgment. The district court denied the defendants' motion for summary judgment that was based on qualified immunity. It is because of that denial that the defendants are pursuing this appeal, which we have jurisdiction to hear under 28 U.S.C. Sec. 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (denial of qualified immunity is an immediately appealable final decision for purposes of Section 1291).[3]
 
 
 6
 To state that this circuit recently has had occasion to decide issues involving qualified immunity would be a generous understatement, and we will refrain from adding to the already lengthy expositions on the subject.[4] Let it suffice to say that qualified immunity shields government officials performing discretionary functions from civil liability so long as their conduct does not violate constitutional rights that were established clearly at the time of the conduct and of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, we must ask whether the refusal to hire Drivers License Examiners during the Republican plaintiffs' priority consideration period, and the subsequent hiring of Democrats or friends of Democrats after the priority consideration period had expired, violated a clearly established right of which a reasonable person would have known. The district court correctly answered that question affirmatively. On February 16, 1989, over two months before the plaintiffs' priority consideration period expired, the full Seventh Circuit decided Rutan v. Republican Party of Illinois, 868 F.2d 943 (7th Cir.1989) (en banc), rev'd on other grounds 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). In Rutan we stated as follows:
 
 
 7
 This is not to say that a laid-off employee is automatically entitled to be considered for other positions with the State, or even his old position, without patronage considerations being taken into account. Failing to rehire after layoff does not in and of itself violate [the First Amendment]. Many laid-off employees will stand essentially in the position of new job applicants when they seek a position. But not all employees will be in that position. If a formal or informal system exists for placing employees into other positions, that system must not include partisan political considerations that cause an employee to lose his employment with the state.
 
 
 8
 Rutan, 868 F.2d at 956 (emphasis added).[5] We would be hard-pressed to articulate that principle any more clearly than did Rutan.
 
 
 9
 In fact, although the defendants contend otherwise in their brief, the conduct of the defendants here fits better into the language of Rutan than that of the successful plaintiffs in Rutan itself. The relevant plaintiff in Rutan, O'Brien, did not claim that he had a specific right to recall, but rather alleged that his employer had a policy that allowed him to be recalled within two years without a break in his seniority or benefits. Id. at 956-57. In this case, however, the plaintiffs have the stronger argument that the Indiana Administrative Code gives individuals terminated during governmental reorganization "priority consideration" for similar vacant positions. See Ind.Admin.Code tit. 31, r. 1-31-1. Although the Indiana Administrative Code does not guarantee those laid-off their jobs back, it is a formal system for placing individuals into other positions and therefore must be untainted by partisan political considerations. See Rutan, 868 F.2d at 956.[6]
 
 
 10
 The BMV had months to react to Rutan, a decision no doubt scrutinized carefully by government officials. A reasonable person would have known that Rutan created a right to have rehiring decisions be free from partisan political considerations in civil service positions such as Drivers License Examiners.[7] The district court was quite correct in denying the defendants' motion for summary judgment based on qualified immunity,[8] and we therefore AFFIRM.
 
 
 
 [1]
 Section one of the Indiana Administrative Code reads in relevant part:
 (A) Any employee in the non-merit service whose employment is terminated as a direct result of state governmental reorganization shall be given priority reconsideration for employment in vacant positions which are of the same or similar class as that in which the employee was employed at the time his employment was terminated....
 (C) Priority consideration means that former employees who are eligible shall be given consideration for same or similar vacant positions to be filled in the following manner:
 (1) If the agency in which the vacancy exists is the same agency from which the former employee was terminated, the appointing authority shall make reasonable effort to offer employment in such positions to eligible former employees prior to making any offers of employment to persons not eligible for priority consideration.
 (2) If the agency in which the vacancy exists is not the same agency from which the former employee was terminated, the appointing authority shall make reasonable efforts to interview and consider the eligible former employees prior to the consideration of other persons.
 (D) Procedures
 (1) To be eligible for priority consideration, the former employee must make written application to the State Personnel Director within thirty (30) days from the date of his termination. Upon receipt of such request, the Director shall determine if the employee is eligible for priority consideration as provided by this Rule.
 (2) If the Director certifies the former employee as eligible, the Personnel Division shall provide the following assistance:
 (a) Provide personal consultation concerning employment opportunities in state government.
 (b) Refer eligibles to available job openings in the non-merit service.
 (E) Conditions of Eligibility. A former employee certified by the director as eligible for priority consideration shall retain priority consideration for a period of one (1) year from the date of his termination.
 Ind.Admin.Code tit. 31, r. 1-31-1.
 
 
 [2]
 The BMV hired one Drivers License Examiner on February 19, 1990, before the plaintiffs' priority consideration period expired, and the other thirteen after that period expired: six on May 29, two on July 9, two on July 23, two on August 6, and one on September 17
 
 
 [3]
 The defendants likely would take issue with some of our characterizations of the facts in this case. Because the trier of fact has not had an opportunity to make factual findings in this case, however, we must examine the facts in the light most favorable to the plaintiffs. Green v. Carlson, 826 F.2d 647, 650 (7th Cir.1987)
 
 
 [4]
 A quick Westlaw search revealed that forty-four Seventh Circuit cases dealt with issues of qualified immunity in 1993 alone
 
 
 [5]
 The defendants' brief quotes the first sentences of this passage from Rutan but terminates without including the final two sentences. Although the defendants accurately quoted the general rule from Rutan, we note that they omitted the immediately following sentences that both qualify the general rule and directly apply to the facts of this case. See Model Rules of Professional Conduct Rule 3.3 cmt. 3 (1991); Model Code of Professional Responsibility EC 7-23 (1981)
 
 
 [6]
 The detailed nature of the formal system for placing individuals into other positions can be seen in the language of the Indiana Administrative Code itself, the relevant parts of which are reproduced supra footnote 1
 
 
 [7]
 The defendants contend that Pieczynski v. Duffy, 875 F.2d 1331 (7th Cir.1989), put this into doubt. Pieczynski, however, did not involve a formal or informal system for placing laid-off employees in other positions, and therefore has no application to the relevant legal principles Rutan enunciated
 
 
 [8]
 Because we have concluded that the unlawfulness of the defendants' conduct was clearly established during the relevant period of time, we need not reach the issue of whether the district court properly examined the defendants' subjective intent