**Gary T. MITCHELL, Plaintiff–Appellee,**

v.

**Bernie C. THOMPSON, et al.,
Defendants–Appellants.**

**No. 93–1002.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1993.

Decided March 7, 1994.

Christopher W. Bohlen (argued), Blanke, Norden, Barmann, Kramer & Bohlen, Kankakee, IL, for plaintiff-appellee.

Charles E. Hervas (argued), James G. Sotos, Michael D. Bersani, Hervas, Sotos & Condon, Itasca, IL, Jo Ann Imani Drew, William E. Herzog, Clark E. Erickson, Brenda L. Gorski, Office of the State's Atty., Kankakee, IL, for defendants-appellants.

Before WOOD, Jr., FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Gary Mitchell ("Plaintiff") alleged that Kankakee County, Bernie Thompson (the County Sheriff) and Edward Jackson (Thompson's Chief Deputy), violated numerous constitutional and statutory guarantees by demoting him in retaliation for his refusal to actively support Thompson's 1990 reelection. Defendants Thompson and Jackson filed a motion to dismiss Plaintiff's suit based on qualified immunity. The district court denied the motion. Thompson and Jackson here appeal. We reverse and remand this case with instructions to dismiss Plaintiff's suit against the defendants.

**I. Background**

In early 1986 Plaintiff was serving as a Kankakee County deputy under the Republican sheriff, and was promoted to sergeant in July of that year. In November 1986 the Republican Sheriff lost the sheriff's election to Thompson, the Democratic candidate. Following Thompson's election, Plaintiff received two further promotions, first to chief of investigative services, and then, several months later, to Chief Deputy for Kankakee

County. Apparently, Plaintiff served Sheriff Thompson satisfactorily, at least until early December 1989 when Thompson announced his bid for reelection. It was then that Thompson actively solicited Plaintiff's personal support, and that of his staff, for the campaign. Plaintiff refused both to support Thompson and to allow those under his supervision to participate in the campaign during office hours. Thompson then demoted Plaintiff to Third–Watch Supervisor. In response, Plaintiff sued alleging violations of his First Amendment and Fourteenth Amendment rights. Thompson and Jackson claimed qualified immunity, and thus moved to dismiss Plaintiff's suit. Contrary to the magistrate judge's recommendation, the district court denied defendants' motion. Thompson and Jackson appealed. For the purposes of this appeal we assume that Plaintiff's demotion was in retaliation for his non-support of Thompson's reelection bid.

## II. Analysis

The issue here presented is one which we are all too familiar—whether a public official is entitled to qualified immunity from a civil suit because the law was not clearly established at the time of his alleged misconduct. In their appeal, Thompson and Jackson argue that they are entitled to qualified immunity. We agree.

■ Over the past year this court has had occasion to decide a substantial number of qualified immunity cases.[1] Thus, as we recently stated in *Anderson*, 16 F.3d at 221, we will refrain from generally adding to that already encyclopedic volume of law. Here let it suffice for us to say that qualified immunity shields, from civil liability, government officials who perform discretionary functions so long as their conduct does not violate a law clearly established at the time of their alleged misconduct. *Id.,* citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1992); *see also Donovan,* 17 F.3d at 947. Among this circuit's qualified immunity cases, we previously have had the opportunity to consider how qualified immunity might apply to a county sheriff accused of political patronage. *See Heideman v. Wirsing,* 7 F.3d 659 (7th Cir. 1993); *Dimmig v. Wahl,* 983 F.2d 86 (7th Cir.1993); *Upton v. Thompson,* 930 F.2d 1209 (7th Cir.1991).

■ In *Upton,* a newly elected sheriff sacked a freshly hired deputy who had actively campaigned for the incumbent. 930 F.2d at 1210. The deputy subsequently sued alleging that the sheriff had violated the First Amendment. While assuming the truthfulness of the plaintiff's allegation, the *Upton* court granted summary judgment for the sheriff based on qualified immunity. *Id.* The reason given for this holding was that, as of 1986, the law did not clearly forbid a sheriff from firing one of his deputies for purely political motives. *Id.* Furthermore, the Supreme Court has taught in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), as understood in this circuit, *see Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985), that a sheriff may continue to use bare political considerations in determining who will serve as one of his deputies. *Upton,* 930 F.2d at 1218. Since *Upton* this circuit has considered the limits of a county sheriff's ability to fire his deputies for political reasons. *See Heideman v. Wirsing,* 7 F.3d 659 (7th Cir.1993); *Dimmig v. Wahl,* 983 F.2d 86 (7th Cir.1993). In *Heideman,* we heard the appeal of a deputy who alleged that he had been wrongfully terminated for his political speech during the sheriff's election campaign. In granting the sheriff qualified immunity we again stated that "[a] sheriff may use political considerations when determining who will serve as a deputy sheriff." 7 F.3d at 664, citing *Upton,* 930 F.2d at 1218. In *Dimmig,* we actually expanded *Upton* somewhat by holding that a new deputy may be discharged merely for failing to support, rather than actively opposing, the incumbent sheriff's re-

---

1. A Westlaw search revealed that in 1993 the Seventh Circuit decided forty-four cases dealing with the issues of qualified immunity. *See Anderson v. Holmes,* 16 F.3d 219, 221 n. 4 (7th Cir.1994). For a more extensive discussion of qualified immunity *see Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994).

election bid. *Dimmig*, 983 F.2d at 87. *Upton, Heideman,* and *Dimmig* pose a steep obstacle to Plaintiff's suit.

For support, Plaintiff cites the Supreme Court's holding in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990),[2] claiming that it clearly forbids Thompson's political demotion of Plaintiff, thus foreclosing Thompson's and Jackson's claim of qualified immunity. We disagree. While creating an exception to the patronage rules for low-level employees, *Rutan* does little if anything to strengthen Plaintiff's position. *See Heideman*, 7 F.3d at 662, discussing *Rutan*, 497 U.S. at 74, 110 S.Ct. at 2736. On the contrary, *Rutan*, decided only six months before Thompson's alleged misconduct, may have moderately complicated this area of the law, so as to actually weaken Plaintiff's argument that this law was clearly established. *See Upton*, 930 F.2d at 1217 (stating that *Rutan* "has recently complicated the patronage question").

Therefore, from the holdings presented in *Upton, Dimmig* and *Heideman,* we conclude that as of November 1990 the law did not clearly forbid Thompson from either firing a deputy, or taking the lesser step of demoting one, for political purposes. Thompson could reasonably have believed that the position of trust and authority occupied by Plaintiff, as the chief deputy, actually made Plaintiff more susceptible than a regular deputy to the demands of political patronage. Thompson and Jackson are thus entitled to qualified immunity for their conduct relating to Plaintiff, and accordingly, the district court should have granted Thompson's and Jackson's motion to dismiss.[3]

### III. Conclusion

For the foregoing reasons we reverse the district court and remand this case with the instructions that Plaintiff's suit should be dismissed with prejudice.

REVERSED and REMANDED.

HARLINGTON WOOD, JR., Circuit Judge, dissenting.

Judge Flaum has well and succinctly stated the law regulating patronage dismissals or demotions. Nevertheless, I am compelled to state a different view, even in the face of the precedents cited, in order to call attention to this law enforcement situation.

Plaintiff, as chief deputy, was, as you have seen, demoted because he declined to actively engage in the Sheriff's campaign for reelection. He did not, however, campaign against the Sheriff. He was neutral. He had been a deputy for a long time and had been promoted twice by the Sheriff who then demoted him because of his political neutrality. Plaintiff's other "misdeed" was that he declined to allow the deputies under his supervision to campaign for the Sheriff's reelection during their regular working hours.

The county has an ordinance authorizing sheriffs to appoint full-time deputies according to "merit principles." What happened in this case has nothing to do with merit, only politics. It was not claimed that the chief deputy was, for instance, incompetent, uncooperative at least in professional matters, antagonistic, disloyal, or insubordinate. Nor is it claimed that this chief deputy, in any degree, interfered with or failed to carry out the Sheriff's law enforcement policies. There is no reason suggested for the demotion other than that the chief deputy wanted to do his law enforcement job undiluted by politics and have those deputies under him do theirs, at least while on county time. The Sheriff, however, wanted them all out campaigning for him. Law enforcement unfortunately appears to be secondary to politics,

---

**2.** The Supreme Court in *Rutan* forbid patronage based employment practices over low-level employees. 497 U.S. at 71–73, 110 S.Ct. 2735–36. The court stated that such practices violated these employees' First Amendment guarantees. *Id.*

**3.** We have not, of course, reached the merits in this case. Whether today the Sheriff's conduct

should be adjudged unconstitutional is not a matter we need to address here. We can demur to the dissent's point that *Upton* and its progeny may be distinguished. Judge Wood's policy argument alone does not *clearly establish* retroactively the laudable proposition of law which he advances. Under the prevailing precedent, unless the law is *clearly established* at the time of the challenged conduct, a defendant is entitled to qualified immunity.

likely not a unique situation in these important offices.

The Sheriff and his chief deputy certainly must work together with mutual trust. The reason they apparently cannot in this case is the fault of the Sheriff, not the chief deputy. I view the Sheriff's actions as a disservice to law enforcement. The Sheriff has all the leeway he needs to be able to fire or demote his deputy for legitimate cause. Politics should not be an active ingredient of good law enforcement.

The majority opinion concludes that the holdings in *Dimmig v. Wahl,* 983 F.2d 86 (7th Cir.1993), *Heideman v. Wirsing,* 7 F.3d 659 (7th Cir.1993), and *Upton v. Thompson,* 930 F.2d 1209 (7th Cir.1991), did not for immunity purposes clearly forbid the firing of the chief deputy. In *Upton,* 930 F.2d at 1210, the fired deputy actively and personally supported the losing candidate which at least distinguishes it from the present case. In *Dimmig* the fired deputy was only on probationary status and vulnerable, but this court also makes clear that the fired deputy was neutral and campaigned against no one. *Id.* at 87. Except for the probationary status that is the present case. Judge Eschbach dissented noting the deputy was fired because he would not campaign for the sheriff which is a form of compelled speech repugnant to the First Amendment. *Id.* at 88. In *Heideman* the fired deputy was also a probationary deputy and in addition got in a barroom hassle growing out of his opposition to the winning sheriff candidate. That distinguishes it from the present case. In his concurrence in *Heideman,* 7 F.3d at 664, Judge Ripple points out that "[m]any communities in this nation have recognized that politics and police work not only need not go hand in hand, but ought not to go hand in hand." *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985), is also cited by the majority. That case, however, involved an employee of the city water department, not a law enforcement officer. I therefore have no objection to the result reached in *Tomczak.* Except for *Tomczak,* which I do not see as applicable, these cases the majority cites were decided after plaintiff was demoted and forecast continued law enforcement personnel actions governed by politics. These cited cases, however, can all be factually distinguished from our present case.

People everywhere are deeply concerned about the extremely serious national crime situation and are searching for ways to do something about it from the Congress to farmers in our rural areas. This court could help. One thing that surely will not advance our crime fighting efforts is to have deputy sheriffs hired, fired, or demoted on the basis of which one of them can best work voting precincts in behalf of the sheriff boss. Instead the basis must be professional competence and abilities. The citizens are the losers even more than this particular chief deputy. Other law enforcement people will continue to be plagued by law enforcement politics and so will our citizens.

Back in 1832 Alexis de Tocqueville said that politics "is the only pleasure an American knows." Keeping law enforcement on a professional law enforcement basis, rather than on a political one, would not unduly limit our political pleasure which we have plenty of already.

I join the views of my colleagues Judge Eschbach and Judge Ripple expressed in the other cases and therefore ask our court to reexamine and reconsider even our recent decisions relating to law enforcement patronage practices, but only as relates to politically neutral law enforcement officers like the plaintiff in this case. I do not see our opinions as being compelled by the Supreme Court. There is no reason in these crime-troubled times for law enforcement personnel to be under the same rule as non-law enforcement personnel. If we do not draw the law enforcement politics exception line in sheriff's offices we will have to continue in the future to risk politics where it does not belong.

I must, therefore, respectfully dissent.