108 F.3d 129
 Annmarie MILAZZO, Plaintiff-Appellee,
v.
Donald P. O'CONNELL, Margaret Kostopulos and Dawn Catuara,
individually and as employees of the Office of the
Chief Judge of the Circuit Court of Cook
County, Defendants-Appellants.
 No. 96-2332.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 13, 1997.
Decided Feb. 28, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied April
22, 1997.
 
 John M. Beal, Chicago, IL (argued), for Plaintiff-Appellee.
 Barry Levenstam, Jerold S. Solovy (argued), Ada S. Cooper, Teri L. Firmiss, Jenner & Block, Chicago, IL, for Defendants-Appellants.
 Before POSNER, Chief Judge, CUMMINGS and CUDAHY, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In September 1995 plaintiff Annmarie Milazzo filed a four-count complaint against Donald P. O'Connell, Chief Judge of the Circuit Court of Cook County, Illinois, and two members of his staff. The district court granted defendants' motion to dismiss Counts I, III and IV but refused to dismiss Count II, resulting in this appeal by defendants.
 
 
 2
 Count II alleged that plaintiff's employment was terminated in violation of the First and Fourteenth Amendments because of her lack of political sponsorship. Plaintiff Annmarie Milazzo was Human Resources Administrator in the Office of the Chief Judge from 1990 to 1995. There were three defendants named to the complaint. Donald P. O'Connell is the Chief Judge of the Circuit Court of Cook County, Illinois. Margaret Kostopulos is Administrative Director or Acting Administrative Director of the Office of the Chief Judge of that court. Dawn Catuara is an administrative assistant to Chief Judge O'Connell.
 
 
 3
 On March 1, 1985, plaintiff was first employed by the Circuit Court of Cook County as secretary to the Executive Officer in the Office of the Chief Judge. In 1990 plaintiff became Administrator of the Personnel Department of the Circuit Court. In 1994 the Personnel Department was renamed the Human Resources Department. According to the complaint, plaintiff's duties were to implement the personnel policies adopted by the Chief Judge and his immediate staff.
 
 
 4
 On December 5, 1994, Judge O'Connell succeeded Judge Harry G. Comerford as Chief Judge of the Circuit Court. Later that month plaintiff had a meeting with Judge O'Connell to discuss the activities of plaintiff and her department. From December 1994 through March 1995 she had frequent contact with Judge O'Connell.
 
 
 5
 On January 30, 1995, defendant Catuara became administrative assistant to Judge O'Connell. Plaintiff's complaint alleges that for several months thereafter, defendant Catuara "relied heavily on plaintiff" but also gave her contradictory instructions and criticized her for "taking actions that defendant Catuara had explicitly directed plaintiff to perform, but which resulted in problems."
 
 
 6
 The complaint alleges that in February 1995 Judge O'Connell directed defendant Catuara to eliminate testing and interviewing procedures for prospective employees "in order to hire new employees based upon their political sponsorship." Plaintiff's complaint also alleges that in June 1995 defendant Catuara criticized plaintiff because "defendant Catuara was embarrassed when she was unable to answer questions by Judge O'Connell about the political sponsorship of certain applicants for the summer job program, and falsely blamed her own inadequacies on plaintiff." In July 1995 defendant Catuara informed plaintiff that Judge O'Connell decided to transfer plaintiff to a lesser position, resulting in a $14,000 per year salary reduction.
 
 
 7
 On July 17, plaintiff's attorney contacted the Chief Judge's office about plaintiff's demotion or reassignment and was informed by defendant Kostopulos that there would be no reconsideration. The following day plaintiff met with defendant Kostopulos and told her she was accepting the position under protest. Later that day Kostopulos called plaintiff and said that Judge O'Connell wanted to know what "under protest" meant and whether she would accept the position "without reservations." Plaintiff said she would do so but the next day received a letter from defendant Kostopulos informing plaintiff that her position was terminated that same day, without an opportunity to be heard.
 
 
 8
 On September 19, 1995, plaintiff filed her four-count complaint, and in April 1996 Judge Castillo granted the defendants' motion to dismiss Counts I, III and IV but denied the motion as to Count II and also denied the motion as to qualified immunity on Count II. According to that Count, the defendants' employment practices depended on the political sponsorship of an employee, and merit-testing procedures were abolished. Defendants supposedly based all personnel decisions predominantly on the basis of political sponsorship, and plaintiff was terminated because of her lack of such sponsorship. This practice allegedly violated plaintiff's rights under the First and Fourteenth Amendments "not to have her employment terminated due to her lack of political affiliation." In this Count plaintiff sought $1,000,000 in punitive damages, compensatory damages to be proven at trial, and her attorney's fees under 42 U.S.C. § 1988. In its opinion, the court pointed out that under Elrod v. Burns, 427 U.S. 347, 360, 363, 96 S.Ct. 2673, 2683, 2684-85, 49 L.Ed.2d 547, a public employer's decision to terminate employees on the ground of political affiliation infringes their First Amendment rights, and the public employer must enunciate a compelling reason to justify the infringement. A compelling reason may be shown if the defendant is able to demonstrate that the dismissed employee occupied a policy-making or confidential position. See Id. at 367, 96 S.Ct. at 2686-87. The district court determined that it could not find as a matter of law from the pleadings that plaintiff's position was policy-making or confidential in nature. Therefore, the motion to dismiss Count II was denied so that defendants could make such a showing, thus justifying the dismissal. This Court reviews de novo the district court's denial of defendants' motion to dismiss on grounds of qualified immunity. See Burns v. Reed, 44 F.3d 524, 527 (7th Cir.1995), certiorari denied, --- U.S. ----, 115 S.Ct. 2583, 132 L.Ed.2d 832; Kernats v. O'Sullivan, 35 F.3d 1171, 1175 (7th Cir.1994). We agree with the district court's analysis and therefore affirm.
 
 
 9
 Qualified immunity shields government officials who are performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396. Whether the defendants will be protected by qualified immunity "turns on the 'objective legal reasonableness' of the action, Harlow, 457 U.S., at 819 [102 S.Ct., at 2739], assessed in light of the legal rules that were 'clearly established' at the time it was taken, id., at 818 [102 S.Ct., at 2738]." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523. As the Court stated in Anderson:
 
 
 10
 The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 11
 Id. at 640, 107 S.Ct. at 3039 (citations omitted).
 
 
 12
 The basic contours of the law in this area are simple: Almost twenty-five years ago we first held that a non-policy-making or -confidential public employee may not be discharged for political allegiance. Illinois State Employees Union v. Lewis, 473 F.2d 561 (1972), certiorari denied, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590. That principle was reaffirmed by the Supreme Court in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574, and Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547, and more recently in O'Hare Truck Service, Inc. v. City of Northlake, --- U.S. ----, 116 S.Ct. 2353, 135 L.Ed.2d 874, the Supreme Court extended that protection to independent contractors. As the Supreme Court stated in Branti v. Finkel: "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the [defendant] can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295. Similarly, this Court has stated that a patronage dismissal will not survive a First Amendment challenge unless the desired political affiliation is "essential to the discharge of the employee's governmental responsibilities." Tomczak v. City of Chicago, 765 F.2d 633, 640 (7th Cir.1985), certiorari denied, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (quoting Branti, 445 U.S. at 518, 100 S.Ct. at 1295); accord Americanos v. Carter, 74 F.3d 138, 140-141 (7th Cir.1996), certiorari denied, --- U.S. ----, 116 S.Ct. 1853, 134 L.Ed.2d 953.
 
 
 13
 Defendants bear the burden of establishing that plaintiff's position falls within the exception created in Elrod and Branti for certain policy-making or confidential positions. See Elrod, 427 U.S. at 368, 96 S.Ct. at 2687; Matlock v. Barnes, 932 F.2d 658, 663 (7th Cir.1991), certiorari denied, 502 U.S. 909, 112 S.Ct. 304, 116 L.Ed.2d 247; Nekolny v. Painter, 653 F.2d 1164, 1169 (7th Cir.1981), certiorari denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139. Defendants argue that plaintiff has plead particulars that show she has no claim, pointing to allegations in the pleadings that plaintiff's duties included implementing the Chief Judge's hiring policies, administering the summer job programs, providing the Chief Judge with information regarding job applicants, and working on budget and payroll issues. As a result, defendants argue that not only was the law not clearly established regarding plaintiff's protection from dismissal for political patronage purposes, but that plaintiff's job tasks show that, as a matter of law, plaintiff held a confidential or policy-making position and was therefore clearly subject to dismissal on those grounds.
 
 
 14
 Plaintiff responds that her complaint explicitly alleges that she had no "autonomous or discretionary authority," nor did she have hiring or firing authority, the ability to formulate personnel policy or an intimate working relationship with the Chief Judge. Plaintiff claims that she was supervised closely and was required to have her correspondence with others approved by the defendants. We find, as the district court did, that if we credit plaintiff's allegations, as we must (see Anderson v. Holmes, 16 F.3d 219, 221 n. 3 (7th Cir.1994)), it is not clear as a matter of law that plaintiff held a confidential or policy-making position or that party affiliation was an appropriate requirement for the effective performance of her duties.[1] Therefore the district court's denial of the motion to dismiss Count II of this complaint was well taken.[2]
 
 
 15
 Judgment affirmed.
 
 
 
 [1]
 The fact that plaintiff had some access to confidential information does not automatically make her a confidential employee within the meaning of Elrod and Branti. See Meeks v. Grimes, 779 F.2d 417, 420-421 (7th Cir.1985). We agree with plaintiff's assertion that there is nothing in her complaint regarding her access to nonpublic information that makes political affiliation a necessary requirement for her position
 In addition, merely being a supervisor/administrator is not sufficient to show that political affiliation is an appropriate requirement for the job in question. See Elrod v. Burns, 427 U.S. at 367-368, 96 S.Ct. at 2686-2687; Flenner v. Sheahan, 107 F.3d 459, 463-464 (7th Cir.1997); Lohorn v. Michal, 913 F.2d 327 (7th Cir.1990) (Assistant Chief of Police). The cases cited by the defendants in their briefs and in oral argument before this court--e.g., Kaluczky v. City of White Plains, 57 F.3d 202 (2d Cir.1995); Bicanic v. McDermott, 867 F.2d 391 (7th Cir.1989); Shakman v. Democratic Organization of Cook County, 722 F.2d 1307 (7th Cir.1983), certiorari denied, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258--are simply not analogous. Those cases cover positions that have hiring authority, involve the submission of budgets, and in many cases acknowledge policy-making authority.
 
 
 [2]
 As this Court recently stated in Flenner v. Sheahan, 107 F.3d at 465:
 [O]n remand, the district court may be presented with evidence that the position of [plaintiff] involves more autonomy or discretion than is alleged in [plaintiff's] complaint. Once the factual record is developed, the district court may be required to revisit the qualified immunity issue.
 Our holding here is simply that at this stage of the litigation and crediting plaintiff's allegations, we cannot say as a matter of law that party affiliation was an appropriate requirement for her position.