In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4162

JAMES R. FUERST,

*Plaintiff-Appellant*,

*v.*

DAVID A. CLARKE,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-C-0295—**William E. Callahan, Jr.**, *Magistrate Judge*.

———————

ARGUED APRIL 12, 2006—DECIDED JULY 27, 2006

———————

Before POSNER, RIPPLE, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal from the grant of summary judgment for the defendant requires us to consider the limitations that the First Amendment has been interpreted to place on decisions regarding personnel actions by a public agency, specifically a sheriff's department. The defendant, David Clarke, is the sheriff of Milwaukee County. The plaintiff, James Fuerst, is a deputy sheriff and also the president of the union of Milwaukee County deputy sheriffs. Clarke is a Republican-leaning Democrat (see Bill Christofferson, "David Clarke Is No Zell Miller, But It's Not Because He's Black," http://www.wisopinion.com/

blogs/2005/06/david-clarke-is-no-zell-miller-but-its.html) in a predominantly Democratic county and was believed to be nursing mayoral ambitions. When he proposed to replace a civil-service position on his staff traditionally filled by a deputy sheriff with a "civilian" answerable only to him, who Clarke's opponents believed would be a public relations "mouthpiece" for promoting Clarke's political career, at an annual salary of $71,500, Fuerst publicly criticized the proposal as a waste of taxpayers' money. Earlier he had campaigned against Clarke's election as sheriff.

Shortly after Milwaukee's leading newspaper reported Fuerst's criticisms, Sheriff Clarke passed him over for promotion to the rank of sergeant, even though Fuerst had scored second out of the 105 deputy sheriffs who had taken the most recent sergeants' examination. When he complained, Clarke told him he'd been passed over because he wasn't "loyal" to Clarke's "vision." The sheriff is not required to promote strictly on the basis of examination scores, but he concedes for purposes of this appeal that it was Fuerst's public denunciation of the "mouthpiece" proposal that doomed his promotion.

Public officials do not violate the First Amendment when they deny for political reasons appointments or promotions to jobs that involve the making of policy or the giving of confidential policy-related advice to a policy-maker. For in a democratic society the formulation of policy by government agencies is an inescapably political activity. Thus, as we explained in *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005), "a public official cannot be fired on the basis of his political affiliation unless the nature of his job makes political loyalty a valid qualification; this could be either because the job involves the making of policy and thus the exercise of political judgment or the provision of

political advice to the elected superior, or because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts. *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980)."

So the first question is whether the job of sergeant in the Milwaukee County Sheriff's Department is such a job. In answering it we must not confuse the making or advising on matters of policy with either discretion or supervision. Discretion often is exercised not only by policymaking officials but also by workers all the way down the chain of command to the bottom-most layer, which in this case would be the policeman on the beat (the equivalent to what in the Milwaukee County Sheriff's Department is called a "deputy sheriff"). That does not make a policeman a policymaker. Nor are first-line supervisors, such as police sergeants (the next rank above deputy sheriff in the Milwaukee County department and the rank to which Fuerst aspired), policymakers, even though they have more discretion than nonsupervisory employees. Senior civil servants exercise significant discretion, but it is discretion regarding how best to implement the policies formulated by their political superiors, and so it does not make them policymakers.

The standard management hierarchy, whether in a government agency or in a private firm, operates on the basis of "management by exception." Luis Garicano, "Hierarchies and the Organization of Knowledge in Production," 108 *J. Pol. Econ.* 874, 875-77 (2000); A. W. Beggs, "Queues and Hierarchies," 68 *Rev. Econ. Stud.* 297, 298 (2001); Stephen Page, *Best Practices in Policies and Procedures* 1 (2d ed. 2002). The workers on the bottom rung use their discretion to decide matters that deviate only

slightly from the completely routine matters that they are trained and experienced in handling. If they encounter a significant deviation from the norm, they bounce the issue up to their supervisor, who has broader authority, and so on up. The issue can rise through many levels before its resolution requires the formulation of policy rather than merely a technical judgment.

The Milwaukee County Sheriff's Department has some 600 deputy sheriffs, 43 sergeants, 22 lieutenants and captains, and an inspector, who is the number 2 official in the department. It is uncertain whether any of these are policymaking officials, even the inspector, who is a police officer rather than a "civilian." "Employee supervisors," the Supreme Court explained in *Elrod v. Burns*, *supra*, 427 U.S. at 367-68, "may have many responsibilities, but those responsibilities may have only limited and well-defined objectives"—and in that event the supervisors are not policymaking officials. For it is only when objectives are broad or poorly specified that political rather than technical or professional judgments properly shape the choice of means for achieving them. See also *Selch v. Letts*, 5 F.3d 1040, 1043 (7th Cir. 1993).

The sergeants in the Milwaukee County Sheriff's Department are not policymaking officials so understood. *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1311 (9th Cir. 2000); *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997); see *Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000); *Flenner v. Sheahan*, 107 F.3d 459, 465 (7th Cir. 1997); *Dickeson v. Quarberg*, 844 F.2d 1435, 1444 (10th Cir. 1988). They have modest supervisory authority and exercise a broader discretion than the deputy sheriffs (the cops on the beat), but they do not formulate departmental policy. At least

their status as policymakers is not so clear that the issue can be resolved on summary judgment.

It is worth noting that Wis. Stat. § 164.015 provides that "no law enforcement officer may be prohibited from engaging in political activity when not on duty or not otherwise acting in an official capacity, or be denied the right to refrain from engaging in political activity." The last clause, read in light of section 164.03, which forbids any "discriminat[ion] . . . by reason of the exercise of the rights under this chapter," including the right of political inactivity conferred by section 164.015, makes clear that sergeants are not expected to be political loyalists of the sheriff. This is relevant to Fuerst's appeal not because the statutory provisions may confer legally enforceable rights on him, an issue of state law that is not before us, but because they cast additional light on the nature of the sergeant's job. The provisions in effect amend the job description (which is vague), *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 756-57 (7th Cir. 2002); *Hager v. Pike County Board of Education*, 286 F.3d 366, 372 (6th Cir. 2002); *Hall v. Ford*, 856 F.2d 255, 264 (D.C. Cir. 1988); *Savage v. Gorski*, 850 F.2d 64, 69 (2d Cir. 1988), confirming that political loyalty is not a valid qualification. To repeat what we said in *Riley v. Blagojevich*, *supra*, 425 F.3d at 359, "a public official cannot be fired on the basis of his political affiliation unless the nature of his job makes political loyalty a valid qualification."

The defendant points to cases in which this court has held that a "deputy sheriff" is a policymaking official. *Mitchell v. Thompson*, 18 F.3d 425, 427 (7th Cir. 1994), however, involved a chief deputy. In *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989), the deputy sheriff was the sheriff's "alter ego." *Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir. 1991),

and *Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir. 1993), do treat deputy sheriffs as policymaking officials, but *Upton* notes that "particularly in a small department, a Sheriff's core group of advisers will likely include his deputies," 930 F.2d at 1218, while here we have a large department. *Upton* notes further that "state legislatures may choose to adjust state laws to protect some level of party affiliation or participation," *id.*, which Wisconsin has done. *Upton* distinguished an earlier case on the ground that there an ordinance protected the deputy sheriff against political firing, thus indicating, like the Wisconsin statutes in the present case, that political loyalty to the sheriff was not a requirement for effective performance of the deputy's job. *Dimmig* does not indicate the nature of the deputy sheriffs' duties, but, like *Upton*, was a case in which the sheriff's department had much less hierarchy than the Milwaukee County Sheriff's Department. Deputy sheriffs in both cases may have been delegated broader powers than deputy sheriffs and sergeants in the Milwaukee department.

The district court thus erred in ruling on summary judgment that the sergeant's position is a policymaking one, and the next question is whether Fuerst's public criticism of the sheriff's proposal to hire a public-relations officer was nevertheless a permissible consideration for the sheriff to use in deciding not to promote Fuerst. Fuerst describes the sheriff's use of words like "loyalty" and "mission" as code words for disapproval of Fuerst's exercising free speech. That is too simple a view. Although Fuerst's public criticism was prima facie protected by the First Amendment as a contribution to political debate, the sheriff is entitled to rebut by showing that Fuerst's exercise of his right of free speech interfered with the efficient operation of the sheriff's department. E.g., *Connick v. Myers*, 461 U.S. 138, 150-51 (1983); *McGreal v. Ostrov*, 368 F.3d 657, 672 (7th Cir. 2004).

(Because Fuerst's comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff—his duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer—the Supreme Court's recent decision in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006), is inapposite.)

The right of free speech is not absolute; it is the point of balance between competing values, in this case that of public criticism of public officials and that of sound management of a public agency. *United States v. National Treasury Employees Union*, 513 U.S. 454, 465-66 (1995); *Caruso v. De Luca*, 81 F.3d 666, 670 (7th Cir. 1996); *Melzer v. Board of Education*, 336 F.3d 185, 193 (2d Cir. 2003). Officials have a right to demand from their subordinates a wholehearted commitment to the agency's mission as defined by the officials. A public criticism of top management may, depending on the occasion, content, and tone of the criticism, violate that commitment and, what is particularly harmful in a paramilitary organization such as a police agency, may undermine command authority. *Williams v. Seniff,* 342 F.3d 774, 784 (7th Cir. 2003); *McGreal v. Ostrov,* 368 F.3d 657, 678-79 (7th Cir. 2004); *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1201 (9th Cir. 2000); *Stanley v. City of Dalton*, 219 F.3d 1280, 1289 (11th Cir. 2000); *Jurgensen v. Fairfax County*, 745 F.2d 868, 880 (4th Cir. 1984).

Despite the wording of the Wisconsin statutes that we quoted earlier, Wisconsin law does not, as far as we are able to determine, consider *all* political activity by law enforcement officers privileged—for what if Fuerst had made false charges of corruption against Clarke? But at the other extreme, suppose that Clarke were an avid hunter and

Fuerst the president of the local animal-rights society and without mentioning Clarke urged the abolition of hunting, infuriating Clarke and inciting Clarke to deny him promotion. Cf. *Grossart v. Dinaso*, 758 F.2d 1221, 1230-33 (7th Cir. 1985). Fuerst's implicit criticism of Clarke would not have demonstrated a lack of commitment to the mission of the sheriff's department.

This case is in between, again precluding the grant of summary judgment to the defendant. On the one hand, Fuerst's criticism of the proposal to hire outside police ranks could be thought a challenge to the sheriff's authority. On the other hand, we are told without contradiction that the president of the deputy sheriffs' union has always been a deputy sheriff, which suggests that when Fuerst is wearing his union president's hat he is not challenging the sheriff's authority but carrying out duties consistent with that authority, since Wisconsin permits public-employee unions.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*