Kristopher BAUMANN, Chairman of The Fraternal Order of Police, Metropolitan Police Labor Committee, Plaintiff,

v.

The DISTRICT OF COLUMBIA, et al., Defendants.

Civil Action No. 09–1189 (CKK).

United States District Court, District of Columbia.

July 11, 2009.

Memorandum Opinion Denying Second Motion For Preliminary Injunction
Aug. 4, 2009.

Gregory T. Lawrence, Anthony Michael Conti, Paul A. Fenn, Conti Fenn & Lawrence LLC, Baltimore, MD, for Plaintiff.

Robert C. Utiger, DC Attorney General, Washington, DC, for Defendants.

## MEMORANDUM OPINION

COLLEEN KOLLAR–KOTELLY, District Judge.

Plaintiff Kristopher Baumann, the Chairman of the Fraternal Order of Police and an Officer of the Metropolitan Police Department, brings this action against the District of Columbia and Cathy L. Lanier, the Chief of the Metropolitan Police Department (collectively, "Defendants"), alleging interference with Plaintiff's First Amendment rights and retaliation based on his whistle-blowing activities.[1] Currently pending before the Court is a Motion for a Temporary Restraining Order and Preliminary Injunctive Relief filed by Plaintiff on June 29, 2009, which the par-

ties fully briefed as of July 8, 2009. After thoroughly reviewing the parties' submissions, relevant case law and statutory authority, and the record of the case as a whole, the Court shall DENY Plaintiff's [4] Motion for a Temporary Restraining Order and Preliminary Injunctive Relief, for the reasons that follow.

## I. BACKGROUND

### A. Factual Background

Plaintiff is the Chairman of the District of Columbia Fraternal Order of Police ("FOP") and an officer employed by the Metropolitan Police Department ("MPD"). Pursuant to Article 9 of the Collective Bargaining Agreement between the FOP and MPD (the "CBA"), Plaintiff is assigned full-time to act as the primary union representative of the FOP. *See* Pl.'s Mot., Ex. 2 at 6 (FY 2004–FY 2008 CBA).

This case has its origins in a "barricade" incident that occurred on May 30, 2009. Such incidents are subject to various written procedures issued by the MPD. *See* Pl.'s Mot., Ex. 1 at 1 (11/7/86 Barricade/Hostage Situation Procedures). Following this incident, the Vice–Chairman of the FOP, Wendell Cunningham, contacted Plaintiff to report that several FOP members raised concerns about the procedures that were used. Compl. ¶ 8. In response, Plaintiff ordered an investigation of the incident by the FOP Safety Committee, an entity that is part of the Joint Safety Committee recognized under Article 17 of the CBA. *See* Pl.'s Mot., Ex. 2 at 18 (FY 2004–FY 2008 CBA).[2]

---

**1.** Plaintiff refers to himself as "Chairman Baumann" and Defendants refer to him as "Officer Baumann." Although both titles are accurate, rather than step into the middle of this semantic minefield, the Court shall use the identifier "Plaintiff" throughout this Memorandum Opinion.

**2.** Vice–Chairman Cunningham oversees the FOP Safety Committee on behalf of Plaintiff. Compl. ¶ 8.

On June 5, 2009, Vice–Chairman Cunningham requested a taped copy of the radio communications that occurred during the barricade incident. *See* Defs.' Opp'n, Ex. A at 1 (6/5/09 Documentation Receipt). In connection with this request, Vice–Chairman Cunningham signed a form ensuring that the radio recordings would not be released to the public:

> It is understood, the following recordings are for internal investigation only, there are no public requests for any of these incidents and the recordings will not be released to the public without prior, written approval from the Office of Unified Communications.

Defs.' Opp'n, Ex. A at 1 (6/5/09 Documentation Receipt).

Within hours after the radio recordings were released to Vice–Chairman Cunningham, Defendants state that "MPD received a telephone call from a reporter representing that he had listened to the recording[s]." Defs.' Opp'n at 2. As a result, Chief Lanier ordered Lieutenant Dean Welch to conduct an Internal Affairs investigation "to determine the circumstances under which the recording[s] [were] released." *Id.* at 2. Although Plaintiff's Complaint alleges that the investigation was launched to specifically investigate Plaintiff and his First Amendment-protected activities, *see, e.g.,* Compl. ¶ 11, the record does not support that position. In fact, Plaintiff's own statements underscore that the investigation involves a broader inquiry into the alleged unauthorized release of the radio recordings to the press as to which Plaintiff may or may not have been involved in some as-yet undetermined capacity. *See* Pl.'s Reply, Ex. 3 ¶ 15 (Affid. of K. Baumann) ("Lieutenant Welch's questions pertained to whether I ordered the FOP Safety Committee Investigation, whether I released an audio recording to

the press, and my communications with other FOP members").

On June 17, 2009, Lieutenant Welch emailed Plaintiff and requested that he provide a convenient date and time to schedule an administrative interview in connection with the investigation:

> Chairman/Officer Baumann, I need you to contact me in reference to scheduling an interview concerning an administrative investigation I am conducting. Please provide me with a date and time at your earliest convenience that you can respond to [the Internal Affairs Division]. Thank you for your cooperation.

Pl.'s Mot., Ex. 4 (6/17/09 Email from D. Welch to K. Baumann). Plaintiff received the email while he was testifying as a witness on behalf of the FOP in an arbitration concerning an "All Hands On Deck" initiative ("AHOD"), an apparent hot-button issue between MPD and the FOP. Pl.'s Reply, Ex. 3 ¶ 3 (Affid. of K. Baumann). Plaintiff alleges that the MPD knew that he was testifying at the arbitration at the time of the communication. Compl. ¶ 14. Plaintiff also argues that the communication violated Article 9 of the CBA because, according to Plaintiff, the FOP Chairman may only receive inquiries about his union activities from the MPD's Labor Relations Representative, and not Internal Affairs. *See* Pl.'s Mot., Ex. 2 (FY2004—FY 2008 CBA) ("[t]he Labor Committee Chairman shall respond to inquiries by the Department's Labor Relationship Representative regarding the type and number of representational activities engaged in for a particular period"). Although Plaintiff repeatedly contacted individuals within the MPD's Labor and Employee Relations Unit to discuss Lieutenant Welch's email, he did not receive timely responses. *See* Pl.'s Reply, Ex. 3 ¶¶ 5–6, 8–9 (Affid. of K. Baumann).

On June 18, 2009, Plaintiff attended a meeting of the Ward 5 Republicans, where he was invited to speak about crime-related issues in the District of Columbia. *Id.* ¶ 7. Plaintiff does not dispute that this was a public meeting. *See* Defs.' Opp'n at 3; Pl.'s Reply at 5. In any event, at the meeting, Plaintiff claims (and Defendants do not dispute) that a uniformed Lieutenant of MPD was present, and that the Lieutenant told Plaintiff that he was on duty and had been ordered to "monitor" Plaintiff's remarks. Compl. ¶ 7.

Finally, on June 19, 2009, Plaintiff reported to an Internal Affairs interview with Lieutenant Welch. Plaintiff was ordered to sign two documents, one that confirmed Plaintiff would respond to questions truthfully, and the other requiring Plaintiff to keep the contents of the interview confidential. *Id.* ¶ 13. Although the record is not entirely clear, it appears that Plaintiff refused to respond to some or all of Lieutenant Welch's questions on the grounds that they improperly impinged on Plaintiff's union activities and Plaintiff's First Amendment rights. *See* Compl. ¶ 23 ("[Plaintiff] responded to these questions by asserting that he was, at all times, acting in his capacity as Chairman of the FOP, and thus the question was improper").

### B. *Procedural Background*

Plaintiff filed this lawsuit on June 29, 2009. Plaintiff's two-count Complaint alleges that Defendants violated the District of Columbia Whistleblower Act, D.C.Code § 1–615.51, *et seq.,* by

engag[ing] in prohibited personnel actions, including threatening discipline and initiating an unwarranted, illegal, and improper investigation and monitoring of [Plaintiff's] protected union activities and free speech and association. Further, the Defendant threatened discipline if [Plaintiff] did not respond to questions by the MPD's Internal Affairs Division.

Compl. ¶ 26. Plaintiff also alleges that Defendants violated his rights guaranteed by the First Amendment of the United States Constitution because

[i]n response to [Plaintiff's] union activities challenging the AHOD initiative, and other alleged actions that purportedly form the underlying bases for the interview conducted by Internal Affairs of [Plaintiff], the MPD has taken adverse action against him in the form of a calculated pattern of intimidation and harassment that is meant to make him feel as if his job as a police officer is in jeopardy based upon his union activities.

*Id.* ¶ 35. Plaintiff seeks compensatory damages, emergency and permanent injunctive relief, and an order compelling disciplinary action against officials found to have acted unlawfully.

In connection with the filing of his Complaint, Plaintiff also filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief (stating identical grounds for relief) seeking (1) to enjoin the Internal Affairs investigation, and (2) to prohibit Defendants' interference with Plaintiff's First Amendment rights by detailing officers at his public speaking engagements and threatening him with discipline for his protected free speech. On June 30, 2009, the Court held a conference call with counsel for both parties on the record to discuss scheduling related to the Motion. Defendants agreed not to call Plaintiff into an interview related to the Internal Affairs investigation or subject Plaintiff to any disciplinary action on any date prior to July 14, 2009. *See* [3] Order at 1 (Jun. 30, 2009). With that agreement in place, and pursuant to the schedule set by the Court, Defendants filed an Opposition to Plaintiff's Motion on

July 2, 2009, and Plaintiff filed a Reply on July 6, 2009.

After reviewing the parties' submissions, on July 7, 2009, the Court issued an Order explaining that Plaintiff had raised a new argument in his Reply that Defendants' actions violated D.C.Code § 5–333.04 (relating to "investigations and inquiries involving First Amendment activities"), and that the statute had not previously been addressed in the parties' previous submissions. Accordingly, the Court ordered Defendants to file a Sur–Reply addressing the applicability of that statute. *See* Min. Order dated Jul. 7, 2009. In compliance with this Order, Defendants filed a Sur–Reply on July 8, 2009, emphasizing that Plaintiff failed to include any claim in his Complaint based on a violation of that D.C. statute and arguing that it is otherwise immaterial. Plaintiff's Motion is therefore fully briefed and ripe for decision.

## II. LEGAL STANDARD

 The standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction is well established. A moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C.Cir.2006); *Hall v. Johnson,* 599 F.Supp.2d 1, 6 n. 2 (D.D.C.2009) ("[t]he same standard applies to both temporary restraining orders and to preliminary injunctions"). In applying this four-factored standard, district courts may employ a sliding scale as to which a particularly strong showing in one area can compensate for weakness in another. *Id.* (quoting *CityFed Fin. Corp. v. Office of*

*Thrift Supervision,* 58 F.3d 738, 747 (D.C.Cir.1995)). Nevertheless, both the United States Supreme Court and the Court of Appeals for the D.C. Circuit have emphasized that a plaintiff must show at least *some* likelihood of irreparable harm in the absence of an injunction. *See Winter v. Nat. Res. Def. Council, Inc.,* — U.S. —, 129 S.Ct. 365, 375, 172 L.Ed.2d 249 (2008) (holding that a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction," and not a mere "possibility"); *CityFed,* 58 F.3d at 747 (holding that a plaintiff must demonstrate " 'at least some injury' for a preliminary injunction to issue ... [because] 'the basis of injunctive relief in federal courts has always been irreparable harm ....' ") (quoting *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)).

## III. DISCUSSION

As set forth above, Plaintiff argues that Defendants violated his rights under the First Amendment of the United States Constitution and the D.C. Whistleblower Protection Act by (1) launching the Internal Affairs Investigation and (2) by monitoring his speech at a Ward 5 Republicans meeting in retaliation for his "protected disclosures." Although Plaintiff's Motion does not clearly identify his protected disclosures, Plaintiff's Reply identifies three: (1) his referral of the barricade incident for investigation to the Safety Committee; (2) his complaints concerning the AHOD initiative and specifically Plaintiff's testimony at an AHOD arbitration; and (3) his speech at the Ward 5 Republicans meeting. *See* Pl.'s Reply at 4–5. While the Court would ordinarily analyze each of the four injunctive relief criteria in context of a plaintiff's claims, in this case, Plaintiff's Motion hits an immediate roadblock warranting a different approach. Put simply, Plaintiff is unable to demonstrate any like-

lihood of irreparable harm because his allegations of future harm are based on nothing more than speculation at this point and on this record.

■ With respect to the Internal Affairs investigation, Defendants emphasize that "MPD has *not* determined how the [radio] recording was released, has *not* determined who released the record[ing], has *not* found *anyone* culpable in the release and *has not* proposed discipline against anyone, most notably [ ] the plaintiff." Defs.' Sur–Reply at 2. Nothing in the Court's review of the record suggests otherwise. Similarly, Plaintiff has not stated that he released the radio recordings, nor does he state that he was otherwise involved with their release. *See generally,* Pl.'s Compl., Pl.'s Mot., Pl.'s Reply. *See also* Defs.' Opp'n at 5 n. 1 ("If it is Plaintiff's position that the release of the radio run is a protected disclosure, it would be useful if [he would] simply acknowledge that he released the radio tape to the press. Then, if adverse action were to be taken against him, there would be a clear issue before the Court."). Given the foregoing, Plaintiff's arguments in support of his Motion are entirely speculative, as demonstrated by the following passage from Plaintiff's Reply:

> Even *if it were true* that Plaintiff or another union member had released the tape in question to the media ... the *alleged* release would constitute protected First Amendment speech *assuming* that the tape was released as part of an effort to expose governmental wrongdoing on a matter of public safety. Defendants' actions of monitoring Plaintiff's Ward 5 Republican meeting speech and ordering Plaintiff to Internal Affairs as the target of an investigation that *could* result in his discharge, would be an im-

proper interference with this *alleged* speech. . . .

Pl.'s Reply at 6 (emphasis added). As is manifest from the underlined text, Plaintiff does not admit releasing the recordings to the news media and Defendants have not found that Plaintiff engaged in any wrongdoing, leaving Plaintiff (and the Court) to guess as to what may or may not occur in the future.

■ Plaintiff argues that he faces "the imminent and irreparable harm of termination from the police force that *may* await Plaintiff *if* the Internal Affairs investigation is allowed to continue, which in turn will result in Plaintiff's inability to continue serving as the Chairman of the FOP . . . ." Pl.'s Reply at 24 (emphasis added). Plaintiff's argument assumes that the investigation, if it continues, will (1) result in a finding that he engaged in wrongdoing and (2) that he will be subject to disciplinary action that will prevent his continuing service as Chairman of the FOP. The Court finds no basis in the record to make those assumptions, nor to reach any other conclusions as to what "may" occur "if" the investigation continues. This type of "feared" harm that may "occur at some indefinite time" is an inappropriate basis for ordering injunctive relief. *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam) (holding that irreparable harm is shown only where a plaintiff's injury is "both certain and great" rather than "theoretical") (internal citation omitted). *See also Mills v. District of Columbia,* 584 F.Supp.2d 47, 63 (D.D.C.2008) ("plaintiff must demonstrate that the injury is of such 'imminence' that there is a clear and present need for equitable relief to prevent irreparable harm ... [and][p]ast constitutional violations, therefore, are not sufficient alone to satisfy the irreparable harm requirement ....") (emphasis in original

omitted).[3]

■ Plaintiff's assertions of irreparable harm fare no better in the context of Defendants' "monitoring" of Plaintiff's speeches. As an initial matter, while Plaintiff's Motion appears to suggest that Defendants have monitored multiple speeches by Plaintiff, *see, e.g.,* Pl.'s Mot. at 10 ("the deployment of uniformed officers to 'monitor' [Plaintiff] while making public appearances on behalf of the FOP ... are intended to chill his First Amendment right to Freedom of Speech and Association"), he in fact identifies only one such instance where he was monitored (the Ward 5 Republicans meeting). *Id.* at 6. Plaintiff does not identify any planned speaking engagements in the future, and provides no basis for the Court to find that Defendants will monitor Plaintiff's unidentified future speeches. *Cf. Caneisha Mills v. District of Columbia,* 571 F.3d 1304, 1308 (D.C.Cir.2009) (finding that the record supported the plaintiff's likelihood of success on the merits and a finding of irreparable harm related to a D.C. police checkpoint program, and explaining that "MPD Police Chief Cathy Lanier stated that she would continue to utilize [the checkpoints] 'until a judge orders [her] to stop' "). In the absence of a showing related to future harm, injunctive relief is inappropriate. *See Taylor,* 56 F.3d at 1508 ("[w]ithout adequate proof of a threatened injury, plaintiff lacks ... an adequate basis in equity for an injunction"). Plaintiff's Reply underscores this point. *See* Pl.'s Reply at 3 ("Plaintiff is not required at this stage to demonstrate harm already suffered. The point of preliminary injunctive relief is to prevent fu-

ture irreparable harm."). Accordingly, the Court finds that Plaintiff has failed to establish any likelihood of irreparable harm in the absence of injunctive relief at this point and on this record.

The undeveloped factual record also leads the Court to conclude that Plaintiff has not shown a substantial likelihood of prevailing on the merits of his claims. In particular, Plaintiff's two causes of action both require Plaintiff to make a factual showing with respect to the *reasons* for Defendants' alleged retaliation and Plaintiffs' alleged protected speech. *See Wilburn v. Robinson,* 480 F.3d 1140, 1149 (D.C.Cir.2007) (holding in the context of a First Amendment violation that a "public employee must have spoken as a citizen on a matter of public concern [and] the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees ... outweighs the employee's interest, as a citizen, in commenting upon matters of public concern") (internal citations and punctuation omitted); *Zirkle v. District of Columbia,* 830 A.2d 1250, 1258 (D.C.2003) (holding in the context of a Whistleblower Protection Act claim that a plaintiff must show that he was subject to a " 'prohibited personnel action' because ... he has made a 'protected disclosure' ") (quoting D.C.Code § 1–615.53).

■ On this record, Plaintiff cannot show that the Internal Affairs investigation was retaliation for his protected speech because (1) the information in the record at this time suggests that it was initiated as a broader inquiry into the alleged unauthorized release of radio record-

---

**3.** To the extent Plaintiff is suggesting that he will suffer irreparable injury merely by having to spend his time answering questions pursuant to the Internal Affairs investigation, this type of harm cannot be considered irreparable. *See Chaplaincy,* 454 F.3d at 298

(D.C.Cir.2006) ("[t]he key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough") (quoting *Wisc. Gas Co.,* 758 F.2d at 674) (emphasis in original).

ings to the press (not Plaintiff's protected disclosures) and (2) a balancing of interests is impossible without knowing who released the recordings and for what reason. Plaintiff's arguments to the contrary are simply unavailing. For example, Plaintiff argues that he "was acting in his union capacity as Chairman of the FOP at all relevant times in this matter," and was therefore subject to the same First Amendment protections as private citizens. Pl.'s Reply at 9–12. For purposes of Plaintiff's Motion, Defendants do not dispute the capacity in which Plaintiff acted, *see* Defs.' Opp'n at 4, nor should they—the argument is entirely unhelpful to Plaintiff. Even if he receives the same First Amendment protections as a private citizen, those protections are not unlimited. Rather, Plaintiff's First Amendment protections— even relying on the cases proffered by Plaintiff—must be balanced against whether his "free speech interfered with the efficient operation" of the MPD. *See, e.g., Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir.2006).[4] In the absence of any facts in the record identifying the precise First Amendment speech at issue, the reasons for that speech, and the consequences that followed as a result, the Court has no basis to find that Plaintiff has a substantial likelihood of success on the merits of his claims based on Defendants' Internal Affairs investigation.[5]

■ Similarly, that Defendants attended and "monitored" Plaintiff's June 18, 2009 Ward 5 Republicans speech does not lead the Court to find that Plaintiff is substantially likely to prevail on the merits of his claims. As an initial matter, Plaintiff's most compelling argument concerning this conduct—that it violated D.C.Code § 5–333.04—is a claim that was not included in Plaintiff's Complaint and is not presently before the Court. *See* Pl.'s Reply at 8 (placing almost singular reliance on this D.C. statute to argue that Defendant's "monitoring" violated his rights); Def.'s Sur–Reply at 1–3 (emphasizing that this claim was not pled in Plaintiff's Complaint). Additionally, Plaintiff fails to otherwise develop his "monitoring" argument in the context of the claims he did include in his Complaint, making no effort to show, for example, that an appearance at one public meeting constitutes actionable retaliation. *Cf. Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir.2006) (explaining that actionable retaliation in the First Amendment context "was that which 'well might have dissuaded a reasonable worker [from asserting First Amendment-protected rights]' ") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). To be clear, the Court is not holding that Defendants' conduct cannot form the basis for a viable claim, particularly if Plaintiff amends his Complaint. The Court is holding, however, that it cannot find that Plaintiff is substantially likely to prevail on the merits of the claims in his Complaint given the present state of the undeveloped record in this case.[6]

---

4. For present purposes, the Court need not decide the applicability of the analysis in *Fuerst v. Clarke* to the present set of facts. The Court notes that Plaintiff does not cite case law from this district to support his analysis of *Fuerst,* and Defendants do not discuss its application at all.

5. Plaintiff repeatedly states that he might be disciplined in connection with the Internal Affairs investigation. The only discipline that

is presently substantiated is that which may occur if Plaintiff does not answer the questions by the investigator truthfully (which is unrelated to any of Plaintiff's protected speech).

6. The Court discerns two other arguments raised by Plaintiff that deserve only brief mention. First, Plaintiff argues that Defendants violated Article 9 of the CBA because his presence at the Internal Affairs interview was

■ Finally, the parties' briefing discussed only briefly the other two elements of injunctive relief (the public interest and harm to Defendants), and an extended discussion by the Court of these elements is unnecessary. In the absence of irreparable harm, and without a finding that Plaintiff is substantially likely to prevail on the merits of his claims based on the record before the Court at this time, no balance of interests could warrant injunctive relief. Nevertheless, the Court finds that the public interest is best served by allowing the MPD's Internal Affairs investigation as to the alleged unauthorized release of the radio recordings to the news media to be completed, rather than to speculate as to what may or may not occur between the parties. Defendants have a similar and substantial interest in ensuring that its internal rules are followed. Nothing argued by Plaintiff persuades the Court otherwise.

## IV. CONCLUSION

For the reasons set forth above, the Court shall DENY Plaintiff's [4] Motion for a Temporary Restraining Order and Preliminary Injunctive Relief. An appropriate Order accompanies this Memorandum Opinion.

## MEMORANDUM OPINION

Plaintiff Kristopher Baumann, the Chairman of the Fraternal Order of Police and an Officer of the Metropolitan Police Department, brings this action against the District of Columbia and Cathy L. Lanier,

the Chief of the Metropolitan Police Department (collectively, "Defendants"), alleging interference with Plaintiff's First Amendment rights, retaliation based on his whistle-blowing activities, and violation of D.C.Code § 5–333.04 (relating to investigations and inquiries involving First Amendment activities). On July 11, 2009, the Court denied Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunctive Relief, finding that (1) Plaintiff had failed to demonstrate that he would suffer any irreparable harm absent injunctive relief, and (2) the undeveloped factual record in this case prevented Plaintiff from demonstrating a substantial likelihood of success on the merits of his claims. See [13] Mem. Op. at 7–14 (Jul. 11, 2009).

Currently pending before the Court is Plaintiff's [20] Second Motion for a Preliminary Injunction, which Plaintiff has filed based on a few additional facts that have developed since the Court issued its previous decision. After thoroughly reviewing the parties' submissions, relevant case law and statutory authority, and the entire record of the case as a whole, the Court concludes that its initial findings remain unaffected by the few factual developments identified by Plaintiff. Accordingly, the Court again finds (1) that Plaintiff has not shown that he would suffer any irreparable harm absent injunctive relief, and (2) that the factual record remains undeveloped, thereby preventing Plaintiff from demonstrating a substantial likelihood of success on the merits of his claims. The Court shall therefore DENY Plaintiff's

---

requested by Lieutenant Welch and not a labor relations representative. *See, e.g.,* Pl.'s Reply at 15–18. While the Court notes that a violation of this provision is not at all clear based on the language of Article 9, for present purposes, the Court simply notes that Plaintiff does not explain how a violation of this provision would support the two causes of action included in his Complaint. Second, Plaintiff

appears to argue that the receipt of an email during his expected arbitration testimony could constitute actionable retaliation. *Id.* at 4. There is simply no factual basis in this record beyond temporal proximity and speculation for the Court to reach any conclusions about whether Defendants sent this email in retaliation for Plaintiff's protected disclosures.

 Second Motion for a Preliminary Injunction, for the reasons that follow.

## I. BACKGROUND

Plaintiff is the Chairman of the District of Columbia Fraternal Order of Police ("FOP") and an officer employed by the Metropolitan Police Department ("MPD").[1] Pursuant to Article 9 of the Collective Bargaining Agreement between the FOP and MPD (the "CBA"), Plaintiff is assigned full-time to act as the primary union representative of the FOP. *See* Pl.'s First Mot., Ex. 2 at 6 (FY 2004–FY 2008 CBA).

This case has its origins in a "barricade" incident that occurred on May 30, 2009. Such incidents are subject to various written procedures issued by the MPD. *See* Pl.'s First Mot., Ex. 1 at 1 (11/7/86 Barricade/Hostage Situation Procedures). Following this incident, the Vice–Chairman of the FOP, Wendell Cunningham, contacted Plaintiff to report that several FOP members raised concerns about the procedures that were used. Am. Compl. ¶ 8. In response, Plaintiff ordered an investigation of the incident by the FOP Safety Committee, an entity that is part of the Joint Safety Committee recognized under Article 17 of the CBA. *Id.;* Pl.'s First Mot., Ex. 2 at 18 (FY 2004–FY 2008 CBA).[2]

On June 5, 2009, Vice–Chairman Cunningham requested a taped copy of the radio communications that occurred during the barricade incident. *See* Defs.' First Opp'n, Ex. A at 1 (6/5/09 Documentation Receipt). In connection with this request, Vice–Chairman Cunningham signed a form ensuring that the radio recordings would not be released to the public:

> It is understood, the following recordings are for internal investigation only, there are no public requests for any of these incidents and the recordings will not be released to the public without prior, written approval from the Office of Unified Communications.

*Id.* The form identified the "[r]equesting agency and [i]dentifier" as "MPD/ERT".[3] *Id.* Defendants assert that the radio recordings could only have been released to Vice–Chairman Cunningham in his capacity as a police officer and not as a union member, *see* Defs.' Second Opp'n at 8 ("neither a 'Mr.' Cunningham nor a 'Citizen' Baumann would have been authorized to simply walk in and get radio run recordings from the Unified Communications Office"), although neither party has identified any evidence in the record supporting or refuting this assertion.

Within hours after the radio recordings were released to Vice–Chairman Cunningham, Defendants state that "MPD received a telephone call from a reporter representing that he had listened to the recording[s]." Defs.' First Opp'n at 2. As a result, Chief Lanier ordered Lieutenant Dean Welch to conduct an Internal Affairs investigation "to determine the circumstances under which the recording[s] [were] released." *Id.*

On June 17, 2009, Lieutenant Welch emailed Plaintiff and requested that he provide a convenient date and time to schedule an administrative interview in connection with the investigation:

---

1. To provide the necessary context for Plaintiff's Second Motion for a Preliminary Injunction, the Court shall repeat a substantial portion of the factual summary from its July 11, 2009 Memorandum Opinion.

2. Vice–Chairman Cunningham oversees the FOP Safety Committee on behalf of Plaintiff. Am. Compl. ¶ 8.

3. "ERT" is the MPD's Emergency Response Team.

Chairman/Officer Baumann, I need you to contact me in reference to scheduling an interview concerning an administrative investigation I am conducting. Please provide me with a date and time at your earliest convenience that you can respond to [the Internal Affairs Division]. Thank you for your cooperation. Pl.'s First Mot., Ex. 4 (6/17/09 Email from D. Welch to K. Baumann). Plaintiff received the email while he was testifying as a witness on behalf of the FOP in an arbitration concerning an "All Hands On Deck" initiative ("AHOD"), an apparent hot-button issue between MPD and the FOP. Pl.'s First Reply, Ex. 3 ¶ 3 (Affid. of K. Baumann). Although Plaintiff repeatedly contacted individuals within the MPD's Labor and Employee Relations Unit to discuss Lieutenant Welch's email, he did not receive timely responses. *See* Pl.'s First Reply, Ex. 3 ¶¶ 5–6, 8–9 (Affid. of K. Baumann).

On June 18, 2009, Plaintiff attended a meeting of the Ward 5 Republicans, where he was invited to speak about crime-related issues in the District of Columbia. *Id.* ¶ 7. Plaintiff does not dispute that this was a public meeting. Am. Compl. ¶ 17. At the meeting, Plaintiff claims (and Defendants do not dispute) that a uniformed Lieutenant of MPD was present, and that the Lieutenant told Plaintiff that he was on duty and had been ordered to "monitor" Plaintiff's remarks. *Id.*

On June 19, 2009, Plaintiff reported to an Internal Affairs interview with Lieutenant Welch. *Id.* ¶ 19. Although the record remains somewhat unclear, it appears that Plaintiff refused to respond to some or all of Lieutenant Welch's questions on the grounds that they improperly impinged on Plaintiff's union activities and Plaintiff's First Amendment rights. *Id.* ¶ 23 ("[Plaintiff] responded to these questions by asserting that he was, at all times,

acting in his capacity as Chairman of the FOP, and thus the questioning was improper").

Plaintiff filed his First Motion for a Temporary Restraining Order and Preliminary Injunctive Relief on June 29, 2009, seeking to enjoin Defendants' Internal Affairs investigation and Defendants' "monitoring" of his speeches. The Court denied the Motion on July 11, 2009, finding that "Plaintiff [was] unable to demonstrate any likelihood of irreparable harm because his allegations of future harm [were] based on nothing more than speculation at this point and on this record." Mem. Op. at 8 (Jul. 11, 2008). The Court also found that "[t]he undeveloped factual record" prevented Plaintiff from "show[ing] a substantial likelihood of prevailing on the merits of his claims." *Id.* at 11.

Plaintiff filed his Second Motion for a Preliminary Injunction on July 24, 2009, along with an Amended Complaint that describes two new factual developments. First, Plaintiff alleges that Defendants "stripped [him] of his police powers" on July 13, 2009, forcing him to surrender his gun and badge "purportedly due to the fact that he missed a training session for calendar year 2008." Am. Compl. ¶ 27. Plaintiff does not allege that Defendants wrongly accused him of missing this training session, nor does he allege that the order to surrender his gun and badge violated an MPD policy. Plaintiff also fails to provide any additional information concerning whether he subsequently attended the training session and/or whether his police powers were thereafter restored.

Second, Defendants proceeded to interview Plaintiff in connection with the Internal Affairs investigation on July 14, 2009. *Id.* ¶ 28. Lieutenant Welch advised Plaintiff that he was under investigation for violating General Order 204. 1, Part 6, Section A, Number 1, which relates to the

release of information to the news media. *Id.* ¶ 29. Plaintiff was advised that "his employment may be terminated (1) as a result of the investigation, and (2) if he refused to answer the investigator's questions." *Id.* ¶ 30. During this interview, Plaintiff "stated that he had provided two news reporters with information regarding the May 30 barricade, including a 14–minute portion of an audiotape of the scene." *Id.*

Defendants filed an Opposition to Plaintiff's Second Motion for a Preliminary Injunction on July 29, 2009, arguing that "there are no materially changed circumstances here that would warrant the entry of preliminary injunctive relief any more than existed when [P]laintiff made his first motion which this Court denied." Defs.' Second Opp'n at 1. Plaintiff filed a Reply on July 31, 2009. Plaintiff's Second Motion for a Preliminary Injunction is therefore fully briefed and ripe for decision.[4]

## II. LEGAL STANDARD

The standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction is well established. A moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C.Cir.2006); *Hall v. Johnson*, 599 F.Supp.2d 1, 6 n. 2 (D.D.C.2009) ("[t]he same standard applies to both temporary restraining orders and

to preliminary injunctions"). In applying this four-factored standard, district courts may employ a sliding scale as to which a particularly strong showing in one area can compensate for weakness in another. *Id.* (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C.Cir.1995)). Nevertheless, both the United States Supreme Court and the Court of Appeals for the D.C. Circuit have emphasized that a plaintiff must show at least some likelihood of irreparable harm in the absence of an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, — U.S. ——, 129 S.Ct. 365, 375, 172 L.Ed.2d 249 (2008) (holding that a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction," and not a mere "possibility"); *CityFed*, 58 F.3d at 747 (holding that a plaintiff must demonstrate " 'at least some injury' for a preliminary injunction to issue … [because] 'the basis of injunctive relief in federal courts has always been irreparable harm ….' ") (quoting *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)).

## III. DISCUSSION

Plaintiff's First Motion for a Temporary Restraining Order and Preliminary Injunctive Relief sought to enjoin Defendants' Internal Affairs investigation and the "monitoring" of Plaintiff's speeches. The Second Motion for a Preliminary Injunction focuses exclusively on the investigation. Plaintiff argues that "[i]t can no longer be said that the threat of Plaintiff losing his job in retaliation for protected speech is speculative; therefore, Plaintiff seeks this Court's intervention before he is unlawfully terminated from his employ-

---

4. Defendants also filed a Motion to Strike the second exhibit attached to Plaintiff's Reply. Because the Court finds that the exhibit is irrelevant to the issues currently before the Court, and because this Memorandum Opin-

ion does not rely on any aspect of the exhibit or the parties' arguments related to the exhibit, the Court shall GRANT Defendants' [24] Motion to Strike.

ment." Pl.'s Second Mot. at 3. The Court disagrees with Plaintiff.

As an initial matter, the parties continue to dispute the nature of the Internal Affairs investigation. Plaintiff argues that the investigation is focused on his disclosure of the radio recordings to the media, which he undertook in his capacity as Chairman of the FOP and not as a police officer. According to Plaintiff, "the MPD has plainly stated that it is Plaintiff's protected speech—his release of information and an audiotape segment to the media—that has placed him in jeopardy of termination of employment or other discipline." Pl.'s Second Mot. at 11.

Defendants dispute this characterization. While conceding that Plaintiff's various criticisms to the press concerning the barricade incident constitute "protected speech," Defendants emphasize that they "are not investigating the conversations [P]laintiff had with the press or statements he made to the public." Defs.' Second Opp'n at 10. Rather, Defendants explain that Vice–Chairman Cunningham requested the radio recording in his capacity as a police officer. *See* Defs.' First Opp'n, Ex. A at 1 (6/5/09 Documentation Receipt) (identifying the "[r]equesting agency and [i]dentifier" as "MPD/ERT"); Defs.' Second Opp'n at 8 ("neither a 'Mr.' Cunningham nor a 'Citizen' Baumann would have been authorized to simply walk in and get radio run recordings from the Unified Communications Office"). In their view, the investigation will determine whether Vice–Chairman Cunningham and/or Plaintiff were acting in official police capacities when one or both obtained and/or released the recordings. *See* Defs.' Second Opp'n at 8 ("the prohibition on further dissemination would not have applied to [P]laintiff, so long as he was receiving the recording as a police officer," and questioning whether Plaintiff received the recordings in his

capacity as a police officer but released them in his capacity as a union official). Thus, Defendants characterize the investigation as limited to "the circumstances under which the recording [that] Officer Cunningham obtained, upon condition [that] it not be further disseminated without written authorization, was improperly released." *Id.* at 3.

The parties' disagreement as to how best to characterize the investigation reflects the larger issue that the investigation has not been completed, and therefore no findings or recommendations have been made relating to Plaintiff or anyone else. The Court previously described this factual uncertainty in its July 11, 2008 decision:

> Plaintiff's argument assumes that the investigation, if it continues, will (1) result in a finding that he engaged in wrongdoing and (2) that he will be subject to disciplinary action that will prevent his continuing service as Chairman of the FOP. The Court finds no basis in the record to make those assumptions, nor to reach any other conclusions as to what 'may' occur 'if' the investigation continues.

Mem. Op. at 9 (Jul. 11, 2009). Defendants correctly emphasize how little has changed, noting that "[t]he investigation on this matter is *still* not complete. *No* finding of misconduct on the part of [P]laintiff has been made. *No* discipline has been proposed as to [P]laintiff. . . ." Defs.' Second Opp'n at 5. At bottom, "no adverse action has been taken, or even proposed against [Plaintiff]." *Id.* at 6.

Beyond the speculative proposition that Plaintiff will be terminated as a result of the investigation, Defendants have submitted uncontroverted evidence that there are multiple types of discipline that could be imposed based on the investigation, and that Plaintiff would have an opportunity to pursue several layers of due process prior

to imposition of any disciplinary action. *See* Defs.' Second Opp'n, Ex. 1 ¶ 4–15 (7/29/09 Decl. of M. Anzallo). Significantly, this evidence establishes that Plaintiff's termination is far from certain and, even if termination were recommended as a form of discipline, Plaintiff would have weeks (if not months) to seek the Court's intervention (assuming there were an appropriate legal basis for such action). While Plaintiff emphasizes that he was told "that his employment *may* be terminated [ ] as a result of the investigation," Pl.'s Second Mot. at 2 (emphasis added), Defendants appear to have advised him of the potential consequences resulting from the investigation, but plainly did not advise him that he *was* going to be terminated.

For these reasons, Plaintiff misses the mark with his blithe assertions that "the threat of Plaintiff losing his job" is no longer "speculative," Pl.'s Mot. at 3, and "[t]here is nothing more to investigate about how the [radio recording] was released." Pl.'s Reply at 3. Defendants have issued no findings pursuant to the investigation and have made no recommendation as to any discipline to be imposed on Plaintiff or anyone else. The Court shall not fill in these blanks with Plaintiff's speculation. As previously explained, injunctive relief is unwarranted where irreparable harm is only a mere possibility. *See Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam) (holding that irreparable harm is shown only where a plaintiff's injury is "both certain and great" rather than "theoretical") (internal citation omitted); *Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1508 (D.C.Cir.

1995) ("[w]ithout adequate proof of a threatened injury, plaintiff lacks . . . an adequate basis in equity for an injunction"). *Cf. Mills v. District of Columbia,* 571 F.3d 1304, 1308 (D.C.Cir.2009) (finding that the record supported the plaintiff's likelihood of success on the merits and a finding of irreparable harm related to a D.C. police checkpoint program, and explaining that "MPD Police Chief Cathy Lanier stated that she would continue to utilize [the checkpoints] 'until a judge orders [her] to stop' "). The Court therefore continues to find that Plaintiff has failed to establish any likelihood of irreparable harm in the absence of injunctive relief at this point and on this record.

■ The Court, once again, also finds that the undeveloped record prevents Plaintiff from establishing a likelihood of success on the merits of his claims. For example, the scope of First Amendment protection afforded to Plaintiff's speech depends on "whether [he speaks] as a citizen on a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 419, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Here, Defendants assert that one purpose of the investigation is to determine in what capacity Plaintiff received and then disclosed the radio recordings to the press. *See* Defs.' Second Reply at 9 ("The investigation . . . is intended to determine how the radio recording, requested officially by the ERT and collected by Officer Cunningham clearly in his capacity as a member of the ERT, was released to the public. Once the facts are known, the MPD will determine whether, in its view[,] official action is warranted").[5]

---

**5.** Plaintiff separately raises a "compelled disclosure claim" on the basis that he "was compelled to disclose information regarding his actions as Chairman of the union." Pl.'s Second Mot. at 12. Because Plaintiff makes no showing that he will be compelled to disclose future information concerning his FOP activities, his compelled disclosure claim provides no basis to award injunctive relief (which requires the threat of future harm, not harm that has already occurred). In any event, because the investigation has not yet resulted in any findings, including those associated with the capacity in which Plaintiff

Only after the investigation is complete will it be known whether Plaintiff is facing discipline for speaking on a matter of public concern as a citizen and not as a police officer.[6]

■ The Court also cannot find, on this record, that Plaintiff is likely to prevail on the merits of his whistleblowing claim for two reasons. First, the Internal Affairs investigation does not appear to involve a protected disclosure because the Whistleblower Protection Act protects statements made to a supervisor or a public body, not the press. D.C.Code § 1–615.52(a)(6), (7). Plaintiff concedes as much. See Pl.'s Reply at 8 ("Plaintiff's whistleblower claim is not defined by the focus of Defendant's Internal Affairs investigation. Rather, Plaintiff asserts that the Internal Affairs investigation *is* retaliation for Plaintiff's [protected disclosures]") (emphasis in original). Second, with respect to Plaintiff's "other" protected disclosures, the Court has already explained that Plaintiff must show that he is subject to retaliation "because of" his protected speech. See Mem. Op. at 11 (Jul. 11, 2009); D.C.Code § 1–615.53 (prohibiting retaliation "because of the employee's protected disclosure"). Plaintiff cannot demonstrate this factual nexus on the present record. See Mem. Op. at 11–12 (Jul. 11, 2009).

With respect to Plaintiff's remaining claim brought under D.C.Code § 5–333.042 (policy on investigations and inquiries involving First Amendment activities), the Court cannot find that Plaintiff is likely to prevail on this claim because it appears that no private right of action exists under the statute. Defendants argue that this statute "was designed to set standards for the MPD, not to create a new private cause of action," Defs.' Second Opp'n at 7, and Plaintiff does not argue otherwise—suggesting only that it would be a matter of first impression. See Pl.'s Second Reply at 10. Even if Plaintiff were correct in this regard, both parties should have provided a far more in depth briefing than what is presented to the Court, as their filings have eschewed legal analysis or citations to any legal authority. Notwithstanding this lack of briefing, it appears based on the Court's analysis that implying a cause of action in this statute is inappropriate because it sets standards of conduct but provides no indication that a private right of action was intended. See Coates v. Elzie, 768 A.2d 997, 1001 (D.C. 2001) (describing the legal analysis "relevant to the question of whether a state law creates an implied cause of action"). Finally, the Court also finds that the undeveloped factual record prevents Plaintiff from demonstrating that Defendants are investigating First Amendment activities as opposed to a violation of an internal MPD regulation by Plaintiff or any other individual.

Based on the foregoing, the Court again finds that Plaintiff has not established a substantial likelihood of success on the merits at this point and on this record. Because the Court also finds that Plaintiff has not demonstrated that he will suffer irreparable harm absent injunctive relief, no balance of interests could warrant in-

___

acted when receiving and then disclosed the radio recordings, the Court finds that this allegation does not provide a basis for injunctive relief.

6. None of the cases cited by Plaintiff suggest a different result. See, e.g., FOP v. Rubin, 26 F.Supp.2d 133 (D.D.C.1998) (holding, under pre-*Garcetti* precedents, that the defendants failed to show that the release of a videotape had a "necessary impact on the actual operation of the government," where there was no dispute that the officers were acting as citizens when they spoke on a matter of public concern).

junctive relief under these circumstances.[7] Accordingly, the Court shall deny Plaintiff's Second Motion for a Preliminary Injunction.

Two issues remain. First, Plaintiff includes a three-sentence argument on page 10 of his Second Motion for a Preliminary Injunction seeking to have the Court declare the MPD's General Order 204.01 (relating to its media policy) unconstitutional on its face. *See* Pl.'s Second Mot. at 10. Plaintiff's Amended Complaint did *not* plead this as a claim, alluding to it only in one sentence in paragraph 44 of the Amended Complaint, and failing to request any declaratory or other relief associated with this supposed "claim." The Court declines to rule on the constitutionality of an MDP policy based on such cursory briefing in the context of a Second Motion for a Preliminary Injunction. If Plaintiff wants to seriously pursue such a claim, he must include the claim in his Complaint (presumably in the context of declaratory relief), and provide more fulsome briefing in an appropriate context.[8]

Second, the Court notes the parties' increasingly hostile tone toward each other reflected in their filings. Defendants correctly emphasize that Plaintiff should have consulted with them prior to filing his Second Motion for a Preliminary Injunction, *see* Local Civil Rule 7(m) (requiring consultation prior to the filing of any non-dispositive motion), particularly where, as here, a motion seeking emergency relief was filed late on a Friday during the summer month of July. Even if the Local Civil Rules did not require such consultation, professional courtesy would suggest that notice should have been provided to Defendants. The Court advises counsel for both parties that, going forward, they are expected to demonstrate civility toward each other and fully comply with the Local Civil Rules at all times. The Court shall consider sanctions if counsel are unable or unwilling to meet these basic standards.

## IV. CONCLUSION

For the reasons set forth above, the Court shall DENY Plaintiff's [20] Second Motion for a Preliminary Injunction. An appropriate Order accompanies this Memorandum Opinion.

---

7. Plaintiff asserts that he has been deprived of First Amendment freedoms, Pl.'s Second Mot. at 16, and that various harms will befall him or others in the absence of injunctive relief, *id.* at 17. These arguments do not weigh in favor of injunctive relief because they rely on the same speculation that has led the Court to conclude that injunctive relief is unwarranted. The Court previously found, and continues to find, that "the public interest is best served by allowing the MPD's Internal Affairs investigation as to the alleged unauthorized release of the radio recordings to the news media to be completed ... [and that] Defendants have a

similar and substantial interest in ensuring that its internal rules are followed." Mem. Op. at 14 (Jul. 11, 2009).

8. A constitutional challenge is also premature at this stage of the litigation because the Internal Affairs investigation has not found Plaintiff culpable for violating this or any other MPD policy. The Court shall not simply assume that Defendants will subject Plaintiff to discipline under this provision in order to rush headlong into the issue of the policy's constitutionality.