In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1340

DONALD OLENDZKI,

*Plaintiff-Appellant*,

*v.*

NEIL ROSSI, Assistant Warden of Jacksonville Correctional Center, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:08-cv-03196-RM-BGC — **Richard Mills**, *Judge*.

ARGUED DECEMBER 12, 2013 — DECIDED AUGUST 29, 2014

Before BAUER, CUDAHY, and POSNER, *Circuit Judges*.

BAUER, *Circuit Judge*. Donald Olendzki is a psychologist at an Illinois state prison. After he was elected to his union's Executive Board, Olendzki began to advocate on behalf of his fellow union members and to voice his concerns to the management staff at the prison. Olendzki believes that this advocacy led to hostile relationships with his superiors and caused them to retaliate against him. So Olendzki sued six of

his superiors under 42 U.S.C. § 1983, claiming that they retaliated against him for his union advocacy, a violation of his First Amendment rights. The defendants moved for summary judgment and the district court granted their motion. We affirm.

## I. BACKGROUND

Olendzki joined the Illinois Department of Corrections in 1989 as a psychologist in the healthcare unit at the Jacksonville Correctional Center ("JCC"). He provided mental health services to inmates and advised his superiors about how best to operate the healthcare unit. His job duties also required him to maintain health and safety standards and report unusual incidents to his superiors.

Throughout his employment, Olendzki was also a member of the American Federation of State, County, and Municipal Employees ("the union"). In April 2004, Olendzki was elected to the union's Executive Board. Until this time, Olendzki enjoyed an amicable working relationship with his superiors.

Olendzki took his appointment as a union official seriously. He regularly attended labor management meetings and served on the Health and Safety Committee ("HSC"), which held separate meetings related to the union. At both types of union meetings, Olendzki frequently raised ongoing complaints common to him and other union members. For example, Olendzki commented at both the labor management and the HSC meetings that mentally ill inmates were creating a "dangerous condition" for staff at JCC. In February 2008, Olendzki voiced his concern that a "dangerous dental tool" went missing and that the tool posed a safety risk to JCC staff.

Olendzki made comments similar in nature at these meetings from April 2004 until January 2010, at which point Olendzki took a voluntary medical leave of absence.

The six defendants in this case were all, at one time or another, employed in a managerial role above Olendzki. Becky Sudbrink was the Health Care Unit Administrator at JCC and Olendzki's direct supervisor from 2005 to November 2006; Neil Rossi was the Assistant Warden of Programs at JCC and Olendzki's direct supervisor from November 2006 on; Terry Polk became the Warden of JCC in December 2005; Jennifer Stoudt succeeded Polk as the Warden in January 2008; Richard Pillow was the Assistant Warden of Operations and was the Acting Warden between Polk's and Stoudt's tenures; Richard Orr[1] was Deputy Director of the Illinois Department of Corrections. We refer to the defendants collectively as JCC management throughout this opinion, unless a specific actor is important.

There is a voluminous record in this case because Olendzki claims not only that the defendants retaliated against him for the statements he made at the union meetings between 2004 and 2010, but also for statements he made concerning the union during his workday. Olendzki expressed many of his complaints directly to JCC management. Olendzki's complaints typically involved three main areas: JCC employees' non-compliance with the collective bargaining agreement, unfavorable work conditions, and JCC management's labor

---

[1] The district court dismissed all of Olendzki's claims against Richard Orr. Olendzki does not appeal the dismissal.

decisions. We provide only a few specific examples, for the sake of brevity.

Olendzki believed that Sudbrink routinely ordered JCC employees to complete work that was actually contracted to the employees of a private company, a breach of the collective bargaining agreement. He thought that as a union official, it was his responsibility to ensure that the terms of the collective bargaining agreement were followed by everyone employed by the Illinois Department of Corrections. He persistently voiced his concerns directly to Sudbrink. When Sudbrink did not change her behavior, Olendzki spoke out about non-compliance with the collective bargaining agreement at union meetings. Warden Polk attended and participated in the union meetings. Sometime in the fall of 2007, Olendzki accused Warden Polk of not correcting Sudbrink's routine violations of the collective bargaining agreement. Olendzki's accusation angered Polk, but the two were able to meet privately and discuss the matter further.

Regarding the working conditions at JCC, Olendzki complained about the workplace environment of JCC employees, the location where he saw inmates, and the type of work he did. For example, Olendzki told Sudbrink that two employees were working in a room which was not properly ventilated and suggested that a microwave oven and a coffee machine in that room be relocated. Olendzki also resisted Rossi's decision to move Olendzki's office from the healthcare unit to a conference room that offered him less security protection; a few months later, Rossi moved Olendzki's office back into the healthcare unit. He also griped about a new program called the telepsychiatry program; he told Assistant Warden Pillow that

he would follow Pillow's order to implement the new program but would also file a grievance because he was assigned work which was not within the scope of work that was to be performed by state employees.

Olendzki also contested JCC management's labor decisions. For example, when he represented his co-worker Missy Utter in a employee disciplinary meeting with Polk, Rossi, and Sudbrink, he "pointed out that Sudbrink had taken Utter's final paycheck and, instead of delivering it to her, [Sudbrink] returned it to the home office of Wexford in Pennsylvania. [Olendzki] suggested that this was evidence of some vindictiveness on behalf of Sudbrink toward Utter." Needless to say, Olendzki's opinions did not always mesh with the opinions of his superiors.

Olendzki asserts that his relationships with JCC management deteriorated when he began advocating for the interests of union members at work. On September 10, 2008, Olendzki filed a lawsuit under 42 U.S.C. § 1983 against JCC management. He contended that they violated his First Amendment rights of free speech and association when they retaliated against him for speaking out on behalf of union members. He claimed that the following acts constituted retaliation: (1) Polk requested, and Orr approved, that Olendzki be removed from the NEMAT team[2], a position Olendzki revered; (2) Stoudt ordered him to meet with mentally ill inmates without guard supervision in the same room; (3) Rossi's relocations of his

---

[2] The NEMAT team was a select group of employees who responded to hostage crises at Illinois correctional facilities.

office were inconvenient; (4) Rossi increased his workload; (5) Sudbrink filed a harassment claim against him; (6) Stoudt did not provide a written justification to Olendzki's request for advance leave time, which resulted in the denial of the request; and (7) Pillow revised institutional directives that affected Olendzki's job duties without Olendzki's input. Olendzki, however, was never fired, disciplined, or denied an employment opportunity.

JCC management raised numerous defenses in response to Olendzki's complaint and moved for summary judgment. They argued that: (1) Olendzki's claims before September 10, 2006, were barred by the two-year statute of limitations; (2) Olendzki's speech was made pursuant to his job duties, thus, not entitled to First Amendment protection; (3) JCC management's actions could not be considered retaliatory; (4) Olendzki failed to establish a nexus between his alleged protected speech and the defendants' alleged retaliation; (5) the defendants had sufficient reasons to justify the alleged retaliation; and (6) the defendants are entitled to qualified immunity.

After a thorough review of the record, the district court granted JCC management's summary judgment motion on all claims. The court ruled that some of Olendzki's retaliation claims were time-barred, some of JCC management's actions were not severe enough to be considered retaliatory, and JCC management was entitled to qualified immunity on Olendzki's remaining claims.

## II.  DISCUSSION

At the summary judgment stage of litigation, the court construes all facts in favor of the nonmoving party, in this case Olendzki. *Springer v. Durflinger*, 518 F.3d 479, 484–85 (7th Cir. 2008). However, it is proper for the court to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact is genuinely disputed must support its assertion with particular materials in the record. Fed. R. Civ. P. 56(c). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). We review the district court's grant of summary judgment *de novo*. *Bivens v. Trent*, 591 F.3d 555, 559 (7th Cir. 2010).

The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957). Public employees do not renounce their First Amendment rights upon employment, however, "the government's countervailing interest in controlling the operation of its workplace" limits the First Amendment's liberal protection. *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014) (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205 Will County*, 391 U.S. 563, 568 (1968)). When reviewing a public employee's speech, the court must first "determin[e] whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First

Amendment claim arises." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (citations omitted). If the court finds that the employee spoke as a citizen on a matter of public concern, then the court must strike "a balance between the interests of [the public employee] in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

Accordingly, we must first determine whether Olendzki spoke as a citizen on a matter of public concern; if we find that he did not, he cannot prevail. Olendzki argues that every time he spoke out about matters that involved the union, he acted in his capacity as a union official, and was speaking as a citizen for First Amendment purposes.

The *Garcetti* Court created the hard rule that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. The distinction is important because "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id*. at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

Our circuit has consistently held that when a public employee speaks in his capacity as a union official, his speech is not within the purview of his "official duties." *See, e.g., Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006) (the First Amendment protected a union president's public criticism of an elected politician because he spoke in his capacity as a union

representative, not as a public employee); *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1124 (7th Cir. 2009) (a union officer's statements at a labor management meeting were made in his capacity as a union representative, not pursuant to his official duties); *Graber v. Clarke*, Case No. 13-2165, 2014 WL 4058976, at *5 (7th Cir. Aug. 18, 2014) (when the union president directed the union vice president to follow a formal grievance process and speak to management on behalf of union members the vice president spoke as a citizen, not as a public employee). However, a union official's communication is not per se protected by the First Amendment and communication that the union does not sanction is not insulated from employer discipline. *Id*. at *7 (a union vice president's comments to a co-worker in passing were not entitled to First Amendment protection).

When making a factual assertion, "it is counsel's responsibility to point it out" in the record. *Rabin v. Flynn*, 725 F.3d 628, 635 (7th Cir. 2013). However, neither in the briefs nor at oral argument, did Olendzki's counsel point out or quote any particular statements that Olendzki made in his capacity as a union official. In Olendzki's brief, counsel quoted statements that JCC management said to Olendzki, but never quoted anything that Olendzki said himself. Instead, we rely on Olendzki's Declaration submitted in opposition to JCC management's motion for summary judgment to search for any instances when Olendzki spoke as a citizen for First Amendment purposes.

We find that Olendzki's representation of union member Missy Utter during the disciplinary meeting qualifies as an activity sanctioned by the union and falls outside the purview

of his official duties as a psychologist. Thus, Olendzki acted in his capacity as a union official, not a public employee, in this context. However, Olendzki's statements during the disciplinary meeting were clearly an employee grievance, speech that the First Amendment does not protect. *Garcetti*, 547 U.S. at 420.

It is clear from the record that Olendzki functioned outside of *Garcetti* strictures and spoke as a citizen in two other forums, the HSC meetings and the labor management meetings. Regular attendance at these meetings was a condition of his appointment as a union official and these forums were sanctioned by the union as a venue to allow Olendzki to voice concerns on behalf of its members. Therefore, his statements during these meetings may be entitled to First Amendment protection. Having identified the instances when Olendzki spoke as a citizen, we then turn to whether his speech during the union meetings addressed a matter of public concern.

Olendzki argues that his speech touched upon a matter of public concern anytime the subject matter involved safety and sanitation issues at JCC, non-compliance with the union's collective bargaining agreement, and inadequate security for JCC employees. We find Olendzki's argument unpersuasive.

To establish that his speech is protected by the First Amendment, Olendzki still needs to establish that he spoke on a matter of public concern—a topic related to "political, social, or other concern to the community." *Connick*, 461 U.S. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Connick*, 461 U.S. at 147–48. "[S]imply because speech relates to prisons does not automatically render

it a matter of public concern," *Spiegla v. Hull*, 371 F.3d 928, 936 (7th Cir. 2004) (*Spiegla I*). "[S]ubject matter alone does not convey constitutional protection." *Nagle*, 554 F.3d at 1123. "We must instead delve deeper into the *precise* content, form, and context of speech that admittedly may be of some interest to the public." *Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 410 (7th Cir. 1994) (emphasis added).

In *Nagle*, the plaintiff, a police officer and union vice president, sued his superiors and co-workers claiming that they retaliated against him after he spoke out at a labor meeting. 554 F.3d at 1111. We held that the plaintiff acted outside his official duties during a labor management meeting when he made statements about the police manpower necessary to keep the community safe. *Id*. at 1123. We denied him relief, however, because it was unclear from the record whether any of the plaintiff's statements were constitutionally protected speech. *Id.* at 1124. We explained that the plaintiff's statements *could* have qualified as a matter of public concern but that he failed to "identify any specific statements that were made at the meeting." *Id.* at 1123. Therefore, summary judgment in favor of the defendants was appropriate. *Id.* Our decision in *Nagle* forecloses Olendzki's claim that he engaged in constitutionally protected speech.

Here, we have scoured the record but found nothing to identify Olendzki's precise statements at the relevant HSC and labor management meetings. Olendzki noted that the HSC had minutes prepared for each of its meetings. However, the only meeting minutes Olendzki provided were from a single HSC meeting on October 14, 2009. And, Olendzki does not claim that he made any constitutionally protected statements

in that meeting. It is peculiar that, despite the availability of the meeting minutes, Olendzki did not provide any for the HSC meetings at issue. Olendzki did not provide minutes or identify specific statements he made at any of the labor management meetings either. Throughout Olendzki's declaration he only describes the subject matter of his speech; the context is apparent, but he does not include its precise content or form.

Without Olendzki's identification of his precise statements, the court has no way to know what he actually said. While it is possible that his statements warrant protection, it is also possible that his speech simply addressed his job duties, were general grievances, raised only his own private interests, or were fighting words—none of which are entitled to First Amendment protection. Many of the matters Olendzki raised at the union meetings, like his concern about the dangers presented by mentally ill patients or the missing dental tool, appear to fall squarely within his job duty to operate the healthcare unit as the prison's psychologist. Olendzki also spoke out about the collective bargaining agreement at the meetings, such as repeating requests to bargain over the implementation of the telepsychiatry program; these statements appear to be general grievances or they only affect Olendzki personally. At the summary judgment stage of a proceeding, a plaintiff must "put up or shut up" and "show what evidence [he] has that would convince a trier of fact to accept [his] version of events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). Olendzki failed to include enough evidence to convince a trier of fact that his comments at the union meetings addressed a matter of public concern.

The remainder of the record is filled with instances when Olendzki spoke as an employee. A public employee's complaints "made directly up the chain of command to his supervisors are not protected under the First Amendment." *Bivens*, 591 F.3d at 560. Olendzki's complaints to JCC management about the collective bargaining agreement, work conditions, and labor decisions were nothing more than employee grievances not entitled to First Amendment protection. "If every facet of internal operations within a government agency were of public concern, and therefore any employee complaint or comment on such matters constitutionally protected, no escape from judicial oversight of every governmental activity down to the smallest minutia would be possible." *Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 974 (7th Cir. 2000).

Because Olendzki did not establish that he engaged in constitutionally protected speech, we do not reach the additional elements needed to prove a prima facie case. Furthermore, we need not address JCC management's qualified immunity defense.

### III. CONCLUSION

In summary, the evidence in the record is insufficient to allow a jury to find in favor of Olendzki. He did not establish that the First Amendment protected his speech. Therefore, the defendants are entitled to judgment as a matter of law. We AFFIRM.